## MILTON PARKER

### *v.*

### CHARLES FOLLENSBEE.

1. DEBT — *meaning of the term.* Any liability to pay money, growing out of a contract, express or implied, constitutes a *debt*, within the meaning of the 15th section of article 13 of the Constitution of this State, concerning imprisonment for debt.

2. IMPRISONMENT FOR DEBT — *capias ad respondendum.* Before a person can be held to bail on a *capias ad respondendum*, for debt, it must appear, by affidavit, that he has been guilty of fraud, or that there is a strong presumption, from facts stated, that he has been guilty.

3. SAME — *affidavit for capias ad respondendum — what it must contain.* An affidavit to hold to bail must show both the constitutional and statutory grounds for issuing a *capias ad respondendum.*

4. The substance of an affidavit which is held to be sufficient for a *capias ad respondendum* is stated in the opinion.

APPEAL from the Superior Court of Chicago.

This was an action of debt on a bail bond, brought by Milton Parker against Samuel M. Standish, principal, and Charles Follensbee, security. Service of process was had on the security only. The declaration was in the usual form on a bail bond, and was admitted by the parties to be sufficient. The only question raised in the record was the third special plea of the defendant, Follensbee, as follows:

" And for a further plea in this behalf, the said defendant says, *actio non,* because he says that the affidavit upon which the writ of *capias ad respondendum* was issued against said Standish, and upon which said Standish was held to bail, as alleged in the declaration, is in the words and figures following, to wit:

"STATE OF ILLINOIS,
    COOK COUNTY.

"Milton Parker maketh oath, that he is about to institute a suit in the Circuit Court of Cook county, against Samuel M. Standish, in an action of assumpsit, upon a written contract of said Standish, of the date of July 16, 1864, wherein and whereby the said Standish agreed, among other things, to build, erect and finish a two story building on the third lot east of Desplaines street, north side of W. Lake street, in the city of Chicago, which is as follows:

" The building to be 65 by 25 feet, a stone foundation of 1½ and 4 feet, and a 1 foot brick wall 5 feet in height — all to be of the best material — a frame work to be put thereon, the first story 11 feet between joists; the second story 9 feet, a composition roof, brackets, cornice stone front, with cornice of neat and tasty kind; the windows in front, of second story, to have

cornice caps. The second story to be partitioned off as desired. The basement story to be finished off into two rooms in front, with stairs in front and rear, and gas and water put into same, and trap door in sidewalk, all to be of the best material, and done in good workmanlike manner, and completed by the 15th day of September, 1864, in consideration for which, he, the said Parker, agreed to pay for the same $3,500 to said Standish, as fast as the work progressed, holding back 15 per cent until the building was completed; and the said Parker was to have the privilege to select two persons to inspect the building, and the said Standish one if he chose; and the said Standish agreed to forfeit $5 per day for every day after the said 15th day of September, that the building should remain unfinished, should there be no providential interposition.

"For breaches of which contract, and money overpaid thereon by said Parker, to said Standish, and to his order, the said suit is to be brought.

"And the said Milton Parker maketh oath further, that the sum which he is justly entitled to recover in the said suit, by way of damages, and which is now due him, amounts to, at the least, the sum of $2,000, as he verily believes, and has ascertained, and the same will be in danger of being lost, and that the benefit of whatever judgment he may obtain in said suit will be in danger, unless the defendant be held to bail in said action.

"And the said Milton Parker further maketh oath that by the terms of said contract he was only to pay the said Standish for the work contracted by him to be done, as the same was done or progressed, and reserving 15 per cent thereof to insure the proper execution of the same; that shortly after the making of said contract, the said Standish came to him, in pursuance, as he believes and avers, of a fraudulent purpose, to cheat and defraud affiant, conceived by said Standish, and entertained at and before the time of making of said contract, and, under various pretenses and urgent appeals, among others that material for building was rising in value, fraudulently induced affiant to advance him large sums of money on said contract, for the

purpose of purchasing his materials to fulfill his said contract, promising affiant at the time, that such advances of money should be faithfully applied to the purchase of such materials, and that affiant did in pursuance of such requests, and to aid said Standish, advance and pay to him sums to the amount of $4,100, and that although the said Standish was to complete the said work and building by the 15th day of September, 1864, he utterly failed to do so, and failed and refused to appropriate the money so advanced to him to the purposes agreed upon and intended as aforesaid; but, on the contrary thereof, fraudulently abandoned and utterly neglected said work, and appropriated said money so advanced to his own use; that, after due notice and demand upon the said Standish, to continue and complete said work, and his refusal and neglect to do so, affiant was, to wit, on the — of October, 1864, compelled, at great expense and loss, to employ others to complete the same, and that, at the time said Standish abandoned said work, and when affiant employed others to finish it, the work, labor and materials furnished and put upon the same by said Standish, including what had been paid upon the stone foundation, amounted to only $1,900, whereas he had already received $4,100 from affiant, for the purpose of erecting said building, and to enable him to fulfill his said contract. M. PARKER.

"Subscribed and sworn to before me, this 13th day of December, A. D. 1864.

WM. L. CHURCH.

"And the defendant avers that said affidavit does not comply with the Constitution of the State of Illinois, and with the statutes of said State in such case made and provided, and is wholly insufficient, in that said affidavit does not, by facts therein stated, or circumstances detailed, raise a strong presumption that said Standish had been guilty of fraud, and so this defendant says that he is discharged from all liability upon the bond, in said declaration mentioned; and this he is ready to verify, etc.

By F. PULVER, *Def'ts Att'y.*"

To which plea the plaintiff demurred, and assigned the following special causes of demurrer : First, that said defendant is estopped by his bond from pleading the insufficiency of said original affidavit ; second, because said · original affidavit, set out in said plea, clearly shows fraud in Standish, in obtaining money of said plaintiff, and is sufficient; third, because said plea is in other respects informal, uncertain and insufficient.

Upon the hearing of the demurrer, the court overruled the same, and gave judgment for costs against the plaintiff in favor of said defendant, to which decision of the court the plaintiff excepted and prayed an appeal to this court, and assigns the following errors :

1. The court below erred in overruling the plaintiff's special demurrer to the defendant's third special plea.

2. The court below erred in sustaining and holding the said defendant's third special plea sufficient.

3. The court below erred in rendering judgment against said plaintiff for costs.

4. The court below erred in rendering judgment against said plaintiff in favor of defendants, Follensbee and Standish, Standish not having been served with process, nor appearing in said suit.

Mr. C. B. Hosmer, for the appellant.

Messrs. Monroe & McKinnon, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action on a bail bond, brought by Milton Parker, in the Superior Court of Chicago, against Samuel M. Standish and Charles Follensbee. The declaration is in the usual form and no question is raised as to its sufficiency. The only objection taken to any portion of the proceedings arises on the third special plea of Follensbee. It avers that the affidavit upon which the writ of *capias ad respondendum* was issued against Standish, and upon which he was held to bail, as alleged in the declaration, does not comply with the Constitu-

tion of the State of Illinois, and with our statute, in so far as it does not by facts therein stated, or by circumstances set forth, raise a strong presumption that Standish had been guilty of fraud, and that he was thereby discharged from liability upon the bond in the declaration mentioned. To this plea, plaintiff filed a demurrer, and assigned various causes, but they only embrace substantial and not formal objections. The court below overruled the demurrer, and, the plaintiff refusing to reply to the plea, the court rendered judgment on the demurrer in favor of defendant for his costs.

The 15th section of the 13th article of the Constitution declares that, "No person shall be imprisoned for debt, unless upon refusal to surrender up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in case there is strong presumption of fraud." It has been repeatedly held by this court, that any liability to pay money growing out of contract, express or implied, constitutes a debt, within the meaning of this provision of the Constitution; and that before a party can be held to bail on a *capias ad respondendum*, it must appear by affidavit that he has been guilty of fraud, or that there is a strong presumption that he is guilty; that the affidavit to hold to bail must show both the constitutional and statutory grounds for issuing the *capias*. This demurrer, then, raises the question whether the affidavit contains these requirements.

It states that Standish was to furnish materials for, and to erect the building, and that appellant was to pay him for the same, as the work progressed, the sum of $3,500. It alleges that the amount justly due appellant was $2,000; that after making the contract, Standish came, as affiant believes and avers, for the fraudulent purpose to cheat and defraud him, such fraud being conceived and entered into at and before the time of making the contract, and, under various pretenses, one of which was that materials for building were rising in value, fraudulently induced appellant to advance him $4,100 for the purpose of purchasing materials for the building, promising to faithfully apply the money thus advanced for that purpose;

that Standish failed and refused to so apply the money thus obtained, but fraudulently appropriated it to his own use and fraudulently abandoned the work, and that appellant was compelled to employ other workmen at great expense and loss; that the materials used, and the labor performed, by Standish, on the building, were only worth $1,900, whereas Standish had received $4,000 for the purpose of erecting the building.

This is the substance of the affidavit. It is true, it is not very artificially drawn, but when carefully considered, it seems to contain in substance these averments, not positively and technically made perhaps, so as to exclude all doubt of fraud on the part of Standish, but it does certainly create a strong presumption that he was guilty of fraud. If it is true, as alleged, that, before entering into the contract for the erection of the building, he formed the design of obtaining appellant's money, and not to perform the contract, it was a palpable fraud. And, although building materials may have been advancing in price, if he only urged that as a means of carrying out his fraudulent purpose of procuring the money to appropriate it to his own use, he can not rely upon the truth of the assertion to justify his conduct. If his purpose in obtaining the money was fraudulent, it can not matter if the reasons assigned to induce appellant to advance the money were true. It was no less a fraud.

Again, it is positively alleged, that he failed to appropriate the money to the purpose for which it was advanced, "but on the contrary thereof, fraudulently abandoned and utterly neglected said work, and appropriated said money so advanced to his own use." The fact, that he procured all of the money on the contract and more, and refused to comply with his contract, and having appropriated the money to his own use, instead of applying it to the purpose for which it was obtained, unexplained by other circumstances, might, perhaps, of itself, raise a presumption of fraud; but, when it is alleged, that such was the purpose for which he procured it, the presumption, to say the least, is strong, that he was guilty of a fraud. And we are

of the opinion, that this affidavit is a substantial compliance with the requirements of both the Constitution and the statute, and that the plea did not present a defense to the action, and the demurrer should have been sustained. The judgment of the court below, is, for this error, reversed and the cause remanded.

*Judgment reversed.*