In re **GREENSTREET**, Inc.

**UNITED STATES v. KENNEDY.**

No. 10901.

United States Court of Appeals
Seventh Circuit.

Jan. 6, 1954.

661

Samuel D. Slade, Cornelius J. Peck, Attorneys, U. S. Department of Justice, Washington, D. C., Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney,

Attorneys, Department of Justice, Washington, D. C., for appellant.

Leonard Gesas, Michael Gesas, Urban A. Lavery, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Bankruptcy proceedings were instituted against the bankrupt herein on March 14, 1951. Almost immediately thereafter, the government filed a reclamation petition asserting title to certain property in the hands of the trustee, which it averred it had supplied to the bankrupt on contract for the purpose of having the latter manufacture therefrom army clothing. The petition prayed that the property, the "purchase price" of which was said to have been $302,500, and which, if completed in pursuance of the contract, would have been worth much more, be surrendered to the government in order that it might proceed to procure completion of the contract by other manufacturers. Inasmuch as it appeared that the Defense Department was badly in need of the material in order to satisfy the pressing needs of the military forces, the court, with the trustee's consent, directed that it be surrendered to the government, without prejudice, however, to the rights of the trustee or any other claimant therein. Later the government filed also a claim for damages for failure on the part of the bankrupt to complete the contract, in the amount of $68,279.72. In due course the trustee filed counterclaims asserting certain liens and unsecured money demands against the property and the government's general claim, which he asserts aggregated $155,593.49. Thus the government was asserting a demand for property presumably of the value of at least $302,000 and a claim for damages in the amount of $68,279.72, the money value of its total claim being, so far as we can ascertain, at least $370,000, whereas the trustee sought to set off against these demands, a total of some $150,000. The government objected to the court's entertainment of jurisdiction of the counterclaims upon the premise that it was immune from suit. The court held that it had jurisdiction and the government appeals from this interlocutory order.

At the threshold we are confronted with the trustee in bankruptcy's motion to dismiss. He insists that the order was not appealable. This issue presents a frequently recurring and often vexatious question of whether the order was entered in a proceeding in bankruptcy or in a controversy arising in a proceeding in bankruptcy. Under Section 24, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 47, sub. a, we are vested with jurisdiction in appeals from orders "in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise or reverse, both in matters of law and in matters of fact". Consequently if the order was entered in the proceedings in bankruptcy, even though interlocutory, it is appealable, whereas, if entered in a controversy arising in bankruptcy, it is not.

We think that, under the facts related, there can be no question but that the order of which complaint is made was entered, at least in part, in the bankruptcy proceedings. As we have heretofore held, such proceedings cover questions arising between the bankrupt or his representative, the trustee, on the one hand and the creditors, as such, on the other, and other well known steps in bankruptcy proceedings, including "allowance and disallowance of claims and the like," all of which naturally occur in the settlement of the estate. In re Breyer Printing Company, 7 Cir., 216 F. 878, at page 880. See also In re Manufacturers Trading Corp., 6 Cir., 1952, 194 F.2d 948, 952–953; In re National Finance & Mortgage Corp., 9 Cir., 1939, 96 F.2d 74; Broders v. Lage, 8 Cir., 1928, 25 F.2d 288; 2 Collier on Bankruptcy (14th Ed.) Section 24.12. In the present case the government, in addition to seeking recovery of certain property, asserted a general claim against the estate. The trustee,

whose duty it is to conserve the assets, objected to the allowance of each of these claims and sought to defeat them by counterclaims demanding substantial sums by way of set-off. The disposition of the issues arising upon the government's general claim and the trustee's counterclaim thereto had to do with the allowance and disallowance of claims, which is a part of the proceedings in bankruptcy. We conclude, therefore, that the order was entered in proceedings in bankruptcy and that, under the Act, the appeal was properly taken from the interlocutory order. As the government had a right to appeal from the order, inasmuch as it covered issues upon the government's general claim and the trustee's counterclaim, the validity of the entire order is before us. The motion to dismiss is denied.

 On the merits of the order, the government concedes that a party sued by the United States may recoup damages arising out of the same transaction, or where authorized, set off other claims, so as to reduce or defeat the government's claim. That this is a correct conception of the law is apparent from United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, at page 511, 60 S.Ct. 653, 84 L.Ed. 894; Bull v. United States, 295 U.S. 247, at page 262, 55 S.Ct. 695, 79 L.Ed. 1421; United States v. Ringgold, 8 Pet. 150, 163–164, 8 L.Ed. 899, though no affirmative judgment over and above the amount of its claim can be rendered against the United States, United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888. The decision that the District Court had jurisdiction, then, is admittedly correct, in so far as it permitted the trustee to set off against the government's general claim in order to defeat it or reduce it, his counterclaim for breach of the contract on the part of the government. Under the Supreme Court's decisions, irrespective of any question of immunity of the sovereign from suit, by filing its general claim the government consented that anything growing out of the same transaction might be interposed by way of set-off to lessen or defeat its claim.

However, there remains the further question of whether the trustee may also, by way of set-off, reduce the property which the government has received without prejudice to and without adjudication of the trustee's rights. The government's position in this respect is that, though it intervened in the bankruptcy proceedings in order to obtain property to which it held legal title, it did not thereby consent, (1), that the trustee might set off as against the property's value any damages alleged to have been incurred by the bankrupt on account of the government's alleged breach in performing its part of the contract or, (2), that the bankrupt estate might assert liens arising under state law against that property, either in its own right or in behalf of employees claiming liens for labor or in any other respect. It insists that to allow any such set-off against the property in satisfaction of the trustee's demands violates the rule of immunity of the sovereign from suit and the subordinate rule forbidding perfection of liens against property of the United States. The trustee in bankruptcy, on the other hand, argues that, inasmuch as the property was in possession of the trustee and in the custody of the court, when the government invoked the jurisdiction of that court in order to recover it, it clothed the court with authority to entertain and allow the trustee's counterclaim of set-off against the property fund in order to satisfy the trustee's demand on both its general claim and its alleged liens.

The referee and the District Court held that the court had jurisdiction to entertain this counterclaim against the property, for two reasons: (1), inasmuch as the court had custody of the property, by filing the reclamation petition, the United States consented to the jurisdiction of the court to determine the rights of all parties in the property, and (2), the court had jurisdiction by

virtue of the Tucker Act, 28 U.S.C.A. § 1346.

■ Apparently the trustee has abandoned his reliance on the Tucker Act. Clearly jurisdiction here cannot be based on its provisions, which restrict the jurisdiction of district courts over claims against the United States to those "not exceeding $10,000". Although that Act's category of permissible claims, namely, "for liquidated or unliquidated damages in cases not sounding in tort", may be broad enough to include actions such as this, the trustee asserts a right of set-off in excess of $155,000. This is clearly beyond the consent granted in that Act. 28 U.S.C.A. § 1346(a) (2).

■ Nor can consent to be sued be implied from the terms of the Bankruptcy Act. The trustee insists that the Act applies to the United States just as it does to any other person. But the United States, as a sovereign, is not bound by a statute which in its general terms would divest it of pre-existing rights or privileges. United States v. Wittek, 337 U.S. 346, 69 S.Ct. 1108, 93 L.Ed. 1406; United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. Moreover, the Supreme Court has specifically held that the United States is not subject to the general provisions of the Bankruptcy Act unless specifically named therein. Guarantee Title & Trust Company v. Title Guaranty & Surety Company, 224 U.S. 152, 155, 32 S.Ct. 457, 56 L.Ed. 706; United States v. Herron, 87 U.S. 251, 260–264, 22 L.Ed. 275. The sovereign immunity from suit is a right and privilege which can be divested only by specific congressional enactment so providing. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894.

■ The question remaining, therefore, is whether, by its intervention in the proceeding below, the United States consented to the jurisdiction of the court to entertain the counterclaim against the property. In the language of the Supreme Court, speaking in United States v. Shaw, 309 U.S. 495, 500–501, 60 S.Ct. 659, 661, 84 L.Ed. 888, "As a foundation for the examination of that question we may lay the postulate that without specific statutory consent, no suit may be brought against the United States. No officer by his action can confer jurisdiction. Even when suits are authorized they must be brought only in designated courts. The reasons for this immunity are imbedded in our legal philosophy. They partake somewhat of dignity and decorum, somewhat of practical administration, somewhat of the political desirability of an impregnable legal citadel where government as distinct from its functionaries may operate undisturbed by the demands of litigants." Again, in Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190, the court said, "The objection to a suit against the United States is fundamental, whether it be in the form of an original action, or a set-off, or a counterclaim. Jurisdiction in either case does not exist, unless there is specific congressional authority for it."

■ The postulate to be distilled from the cases is, as we have observed, that the United States, by initiating an action as a plaintiff, consents to the jurisdiction of the court to entertain any defensive plea including the right of set-off to the extent of the government's claim, but does not thereby consent to an affirmative judgment on a counterclaim. Stated differently, this consent empowers the court to decide all issues necessary to dispose of the general claim initiated by the government, but does not, as in the case of private litigants under the Federal Rules, extend to power to decide separate affirmative claims which the defendant may have by way of counterclaim. United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327; United States v. United States Fidelity & Guaranty Company, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. Ansonia Brass & Copper Co., 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107; North Da-

kota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484, certiorari denied 291 U.S. 672, 54 S.Ct. 457, 78 L.Ed. 1061; Jones v. Watts, 5 Cir., 142 F.2d 575, 163 A.L.R. 240; United States v. National City Bank of New York, 2 Cir., 83 F.2d 236.

In United States v. Alabama, supra, the government sought to quiet title to certain real estate against which the state asserted liens. The state court had entered a decree of sale and directed a certificate of purchase to issue to the state. The government sought to have the liens declared invalid and to set aside the judgment of the state court. The Supreme Court sustained the validity of the liens, inasmuch as they had attached before the government acquired the real estate but held them unenforcible so long as the land remained the property of the United States. The judgment of sale was accordingly set aside.

In United States v. Ansonia Brass & Copper Co., 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107, the United States had entered into separate contracts with Trigg, a Virginia corporation, for the construction of three vessels. While the ships were in various stages of construction, creditors of Trigg filed an action in the state court asserting a lien on its property under the state statute. A receiver took possession of Trigg's property, including the three vessels. The United States intervened, asking that the vessels and material on hand be released to it. A judgment holding the creditors' lien superior to the government's title was affirmed by the Supreme Court of Appeals of Virginia. The Supreme Court of the United States reversed as to the Benyuard, under the contract for the construction of which title to all equipment and parts of the vessel upon which progress payments had been made passed to the United States immediately. The court ruled that no lien could attach against the vessel by operation of state law, without the express consent of the government.

In North Dakota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484, certiorari denied 291 U.S. 672, 54 S.Ct. 457, 78 L.Ed. 1061, the United States filed a bill to foreclose a mortgage on real estate. The mortgagor did not deny the averments of the bill, but asserted a right to an accounting for a quantity of wheat, allegedly delivered to agencies of the Federal Farm Board, for the purpose of setting off against the money due the mortgagee sufficient sums to satisfy the note and mortgage. This was declared to be an attempt to sue the United States without its consent. See also Jones v. Watts, 5 Cir., 142 F.2d 575, 163 A.L.R. 240.

In United States v. National City Bank of New York, 2 Cir., 83 F.2d 236, the United States, as assignee of the Government of Russia, asserted title to certain funds deposited in a bank to the use of Russia. The bank's answer admitted Russia's title, but averred that the bank held overdue promissory notes of that government in excess of the amount of the deposits and asserted a right to set-off its claim. The court approved this position, but only to defeat the government's claim.

In In re Read-York, Inc., 7 Cir., 152 F.2d 313, the bankrupt had agreed to build three gliders for the United States. The contract provided that upon making progress payments, the title to the material to which the payments were applicable would vest in the United States. The District Court held that creditors of the bankrupt could assert title against the property. This court reversed, holding that the laws of the state could not operate to defeat the government's title.

The cases cited by the trustee do not impinge upon the soundness of these decisions. United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 113, 69 L.Ed. 313, grew out of a collision between the Thekla and the steamship Luckenbach, operated by the United States. The United States filed a libel against the Thekla. Her owners answered by a cross-libel against the Luckenbach. The court allowed the cross-libel and entered judgment in admiralty against the Unit-

ed States, on the theory that the collision, not the vessel first libeled, was the subject matter of the action. By bringing the original libel the United States had consented to the jurisdiction of the court "that justice may be done with regard to the subject matter", viz., the adjudication of fault in the collision. See United States v. Shaw, 309 U.S. 495, 502, 503, 60 S.Ct. 659, 84 L.Ed. 888.

The Siren, 7 Wall. 152, 19 L.Ed. 129, also arose in admiralty. There the United States filed a libel seeking to condemn the Siren as lawful prize. Before this proceeding was instituted and while the vessel was in the hands of a prize crew and in the possession of the United States she collided with and sank the sloop Harper. The court allowed a claim by the owners of the Harper against the proceeds of sale of the Siren in the hands of the admiralty court on the theory that title to the vessel was not perfect in the United States until the judgment of condemnation had declared the vessel lawful prize. Therefore, the United States, having placed the vessel and its proceeds in the course of judicial administration, was held to have consented to the court's jurisdiction over any claims against the vessel, which arose prior to that of the government. See Carr v. United States, 98 U.S. 433, 438–439, 25 L.Ed. 209.

Brent v. Bank of Washington, 10 Pet. 596, 9 L.Ed. 547, involved a question of priority of claims only, not an attempt to assert a claim against property which concededly belonged to the United States. In United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, the court treated an action for possession of lands in the hands of certain officials of the United States as one against the officials, not against the government itself. This decision, rendered shortly after the Civil War, is explainable, we think, as an application of a firm judicial hand extended to exert a calming influence over the hysteria, and oftentimes injustice, prevailing in relations between the Nation's Government and the citizens of the defeated Confederate States. At any rate, the Court expressly denied that it was condoning an action against the United States.

United States v. Ringgold, 8 Pet. 150, 8 L.Ed. 899, was an action in assumpsit by the United States against a former federal marshal for $345 received by him by virtue of his office. The defendant answered, claiming an amount due him by the government of some $1100 as poundage fees under the laws of the State of Maryland on a body execution against one Gates at the suit of the United States. Gates had been released from defendant's custody by order of the President. The defendant's claim was allowed only to the extent necessary to defeat the unsecured claim of the government, the court treating this as a defensive set-off, although there is no intimation that the claims arose out of the same transaction. Nothing in this case however persuades us that, when considered with the later pronouncements of the Supreme Court in the Fidelity, Shaw, Ansonia and United States v. Alabama cases, the trustee in bankruptcy may assert liens or demands against the title of the government.

We are of the opinion that a distinction must be drawn between the two aspects of the government's claims, namely, its reclamation petition and its claim on the contract. This is necessary because, under the contract, title to the materials in question was expressly reserved in the United States. The trustee, standing in the shoes of the bankrupt, concedes that title remained in the United States, but argues that, inasmuch as the property was in the custody of the court, when the government filed its reclamation petition, it consented to the jurisdiction of the court to settle all claims against the property itself.

We think that the fact that the property was in the custody of the court is not decisive. Our inquiry must turn on a determination of the extent of the court's jurisdiction over the United States. We conclude that, since the latter retained title to the property, no

lien or claim on behalf of the bankrupt or its creditors could attach thereto by operation of state law while the property was in the hands of the bankrupt. United States v. Alabama, 313 U.S. 274, 282, 61 S.Ct. 1011, 85 L.Ed. 1327; United States v. Ansonia Brass & Copper Co., 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107; In re Read-York, Inc.; 7 Cir., 152 F.2d 313. The rights of the trustee in this respect are no more extensive than those of the bankrupt's creditors, and the court's jurisdiction extended, therefore, to only one issue, viz., the question of title. Having found title to be in the United States, it had no jurisdiction to entertain demands against the same for damages or for liens. United States v. Ansonia, etc., supra; Carr v. United States, 98 U.S. 433, 25 L.Ed. 209.

■■■ The receiver argues that immunity was waived by the action of officers of the United States. This result is said to grow out of the fact that no answer to the counterclaim denying jurisdiction was filed. The argument, as we understand it, is that the government, by bringing suit, consented to the resolution of all questions that might be put in issue, as to the property owned by the government, and that, if the court did not have jurisdiction initially, failure of the government to answer acts as a waiver of immunity.

This argument ignores the settled rule that the government cannot lose its immunity by any act or omission of its agents, and that consent to be sued cannot be implied from the action or inaction of its officers. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (failure to appeal an adverse judgment does not work an estoppel against the government); Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L. Ed. 235 (stipulation by the United States Attorney for removal of a cause to a federal court does not give the court jurisdiction, where the state court in which the action was brought had none, notwithstanding the fact that the action

might properly have been filed initially in the federal courts); Carr v. United States, 98 U.S. 433, 25 L.Ed. 209 (The Secretary of the Treasury could not waive the immunity of the United States from suit by participating in actions in state courts for possession of lands); North Dakota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484, certiorari denied 291 U.S. 672, 54 S.Ct. 457, 78 L.Ed. 1061. Cf., United States v. Ringgold, 8 Pet. 150, 8 L.Ed. 899. The fact that the property here involved was in the custody of the bankruptcy court initially did not, we think, defeat the application of the rule.

■■■ We conclude that the District Court had jurisdiction to entertain and determine the trustee's counterclaims in so far as they ran against and asserted set-offs to lessen or defeat the government's unsecured claim for damages, but not to allow any part thereof, over and above the amount of the government's general claim, as an affirmative judgment against the United States, and, further, that the court had no jurisdiction to allow the trustee's counterclaim as a set-off against the government's title to property which belonged to it and which it was compelled to come to the court to reclaim. Against such a reclamation, we think, the bankrupt had no right to assert its general claim for damages, or any claims for liens. A claim of title made by the government in court is not a concession that its title may be subjected to demands or liens without congressional consent. The order from which the appeal is taken is affirmed in so far as it allows the trustee to off-set its demand for damages, to lessen or defeat the government's unsecured claim. In so far as it contemplates jurisdiction to allow the trustee's counterclaim for damages or for liens in such a manner as to defeat or lessen the title of the United States to the property involved, it is reversed. The cause will be remanded to the District Court for further proceedings not inconsistent with the views herein expressed.