Sarah B. DANNING, Trustee in Bankruptcy of the estate of Samuel N. Sherman, dba Southern California College of Business, Bankrupt, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15568.

United States Court of Appeals Ninth Circuit.

Aug. 28, 1958.

Gendel & Raskoff, Los Angeles, Cal., for appellant.

George C. Doub, Asst. Atty. Gen., Hershel Shanks, Samuel D. Slade, William W. Ross, Attorneys, Department of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, Chief Judge, and CHAMBERS and BARNES, Circuit Judges

BARNES, Circuit Judge.

This is a case where appellant urges that sovereign immunity is not in the case—only a question of whether the government consented to be sued by filing a claim in bankruptcy. But this is mere semantics, for if the government by its action "consented" to be sued, it had waived its sovereign immunity, even though its sovereignty was not inpaired.

There is but one question involved in this case. Does a court of bankruptcy have jurisdiction to hear and determine a counterclaim for affirmative relief asserted by the trustee in bankruptcy against the United States arising out of the same transaction as the claim filed by the government in the bankruptcy proceedings? The Referee in Bankruptcy held that it did not have such jurisdiction, and a petition for review was

denied by the District Court. The appeal here is timely and proper.[1] A recital of facts seems unnecessary.

It is apparently conceded by both parties here that if the United States Government were not the party claimant, and a mere creditor had filed a claim against the bankrupt's estate, then the bankruptcy court would have jurisdiction to enter a summary judgment against the claimant upon a counterclaim asserted by the trustee as an objection to the claim. In re Nathan, D.C.1951, 98 F. Supp. 686; 26 So.Cal.L.Rev. 167 (1952).

The government recognizes this general rule, but claims the doctrine of sovereign immunity overcomes the usual rule of law expressed in the Nathan case, prevents recovery, and requires a dismissal of the counterclaim, this being an "unconsented" claim against the government.

The government suggests that this rule of law respecting the sovereignty of the United States has been made clearly applicable to claims against the United States in summary bankruptcy proceedings by many cases, and particularly by United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894, holding void for lack of jurisdiction the affirmative decree of a summary bankruptcy court on a trustee's counterclaim against the United States.

Appellant replies that the Chandler Act Amendment of 1938[2] was enacted subsequent to the bankruptcy court judgment in the United States v. United States Fidelity case, supra; that the Second Circuit in United States v. Roth, 1948, 164 F.2d 575, held that the 1938 amendments to the Bankruptcy Act repealed the ruling of the Supreme Court in the United States Fidelity & Guaranty Co. case in that while § 68, sub. a of the Bankruptcy Act (11 U.S.C.A. § 108, sub. a) deals with set-offs and does not specifically name the United States (and

hence there was no waiver of sovereignty with regard to set-offs), taxes owed to the United States are dealt with separately in § 64 sub. a; that before the 1938 Amendment, taxes could not be proved as claims and the court could only "order the trustee to pay all taxes legally due and owing by the bankrupt to the United States;" but that after the Amendment, taxes owed the United States were classed as "debts" and provable as any other claim.

Although the United States is a claimant for purposes of collecting taxes under the 1938 Amendment, and thus there has been enacted a waiver of its sovereign immunity in that respect, has there been a waiver of immunity with respect to other "claims" against the United States? Such was the intent of Congress, says appellant, and "a reading of the Bankruptcy Act," and "particularly the provisions of § 57,[3] demonstrates that Congress intended that the Government as a claimant should be upon exactly the same basis as any other claimant;" that "Section 68, sub. a,[4] * * * permitting set-offs, must be construed in harmony with the other provisions of the Act," and that "the absence of a specific reference to the United States in the set-off section can no longer be deemed significant." United States v. Roth, supra, 164 F.2d at page 578.

If we are to follow United States v. Roth reasoning, then we must agree

"that the Act, as it now stands, treats the tax claim as a debt and the United States as a creditor which, like other creditors, must make proof of claim on a form containing a statement about set-offs. Section 68, sub. a, 11 U.S.C.A. § 108, sub. a, permitting set-offs, must be construed in harmony with the other provisions of the Act * * * the absence of a specific reference to the United States in the set-off section can no longer be deemed significant.

1. Act of July 1, 1898, as amended, Chapter 541, Sec. 24, 25, 30 Stat. 553, as amended. 11 U.S.C.A. §§ 47, 48.

2. 52 Stat. 840, 874.

3. 11 U.S.C.A. § 93.

4. 11 U.S.C.A. § 108, sub. a.

Consequently we are able to find legislative authorization for set-offs against tax claims of the United States." United States v. Roth, supra, 164 F.2d at page 578.

But to reverse here, we would be required to go one step further than does the Roth case. It will be remembered that in Roth, Judge Swan, on the question of affirmative relief against the government, states "whether the bankruptcy court could enter an affirmative judgment against the United States, if the bankrupt's counterclaim had exceeded the Government's tax claim, *is not presented by this record and need not be considered."* (Emphasis added.) United States v. Roth, supra, 164 F.2d at page 578, note 7.

The court then cites United States v. Shaw, 1940, 309 U.S. 495, 502, 60 S.Ct. 659, 84 L.Ed. 888 and United States v. Biggs, D.C.E.D.Ill.1946, 46 F.Supp. 8, 11. The reason that issue was not determined in Roth was the holding in United States v. Shaw, which is, of course, binding on the Second Circuit as it is on us. And Shaw specifically holds:

"It is not our right to extend the waiver of sovereign immunity more broadly than has been directed by the Congress. We, of course, intimate no opinion as to the desirability of further changes. That is immaterial. Against the background of complete immunity we find no Congressional action modifying the immunity rule in favor of cross-actions beyond the amount necessary as a set-off." United States v. Shaw, supra, 309 U.S. at page 502, 60 S.Ct. at page 662.

United States v. Biggs, supra, examined the immunity problem from the standpoint of the Tucker and Miller Acts, and said:

"The principal purpose of the Court of Claims is to examine and determine claims for money against the United States. Ex parte Bakelite Corporation, supra [279 U.S.

438, 49 S.Ct. 411, 73 L.Ed. 789]; Williams v. United States, supra [289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372]. \* \* \*

"Under this state of the law can this counterclaim be allowed? If a suit is brought by the United States against a defendant for an amount allegedly due the United States, defendant may properly set up by way of defense any amount owing him to the extent of such claim. The court, however, has no jurisdiction to render an affirmative judgment against the United States on a counterclaim. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. Nipissing Mines Co., 2 Cir., 206 F. 431; United States v. Eckford, 6 Wall. 484, 18 L.Ed. 920. In United States v. Nipissing Mines Co., supra, [206 F. 434], the court said: 'In our opinion, the Tucker Act of 1887 which gives the District Courts jurisdiction over certain suits against the United States, is not broad enough to permit the recovery of demands upon counterclaims. We think that that statute refers to original suits and prescribes procedure inconsistent with its use as the basis of a counterclaim.' In United States v. Shaw, supra, [309 U.S. 495, 60 S.Ct. 662, 84 L.Ed. 888], the court said: 'Against the background of complete immunity we find no Congressional action modifying the immunity rule in favor of cross-actions beyond the amount necessary as a set-off.' If this court were to take cognizance of defendant's counterclaim and give judgment upon it, it would exceed its specifically defined jurisdiction of suits against the United States under the Tucker Act. The United States is merely a nominal party plaintiff and made plaintiff only because of the requirement expressed in the Miller Act. It has no actual pecuniary interest. The suit is for

the benefit of the subcontractors, and upon its successful prosecution, they only will receive the benefits of the judgment. That this is true is indicated by the provision in the Miller Act that 'the United States shall not be liable for the payment of any costs or expenses of any such suit.' 40 U.S.C.A. § 270b." Id., 46 F.Supp. at page 11.

Thus we prefer to distinguish United States v. Roth on its facts, and on those facts it did not pass upon, rather than on the government's argument that the Chandler Act Amendment of 1938 changed § 64, sub. a ((11 U.S.C.A. § 104, sub. a) taxes became claims) and did not change § 68, sub. a (11 U.S.C.A. § 108, sub. a). In the opinion of the second circuit, it did change the set-off provisions by including the United States as a "creditor" for certain purposes, though not for all. With this, we agree.

But appellant also relies heavily upon In re Ward, D.C.D.Colo.1955, 131 F.Supp. 387. There an opinion and a supplemental opinion rendered by Referee Hilliard were upheld by Chief Judge Knous. The latter does not discuss the law, being satisfied with the Referee's reasoning. The Referee's supplemental opinion took the position that § 23, sub. b of the Bankruptcy Act (11 U.S.C.A. § 46, sub. b)[5]

"is as applicable to the United States as it would be to any other unsecured claimant who has filed a claim in the proceeding, for there is nothing in the Act, excepting the priority of payment mentioned, to indicate that the government is to be accorded any rights or privileges denied to other creditors. * * * Thus * * * it was the intention of Congress to waive the immu-

nity of the United States from suits in matters arising out of the participation of the United States as a claimant in bankruptcy proceedings. * * * If this were not so the government would be in a position to 'reach out with Briarean arms to gather the benefits * * *; and then draw back under the protection of its sovereign immunity, even while an accounting upon its claim before the Referee in bankruptcy is in progress'." In re Ward, supra, 131 F.Supp. at page 396.

Referee Hilliard then pointed out that he had "assumed that the United States had consented to the jurisdiction, but this is now disputed;" that the government had failed to argue the matter in its briefs, as ordered; that

"the government [had] ignored the issue and confined its argument to the merits. It was not until after the Referee had made his findings and order, leaving nothing to be done but settlement of the decree, that the government asserted a lack of jurisdiction. *This came too late.*" *Ibid.* [Emphasis added.]

The Referee then held the government could consent, and had waived any right of objection:

"that the United States consented to such jurisdiction both by the filing of its unsecured claims and by waiver of any rights of objection." Id., 131 F.Supp. at page 397.

The Referee cited authorities to the effect that there *can* be waiver in an ordinary case where the government is *not* a party. He recited that the government raised the issue in the Ward matter, and that he had ordered the matter argued in the briefs, but it was not. From this he found a waiver, and

---

5. 11 U.S.C. § 46, sub. b reads as follows:
"Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant,

except as provided in sections 96, 107, and 110 of this title. July 1, 1898, c. 541, § 23, 30 Stat. 552, Feb. 5, 1903, c. 487, § 8, 32 Stat. 798; June 25, 1910, c. 412, § 7, 36 Stat. 840; May 27, 1926, c. 406, § 8, 44 Stat. 664; June 22, 1938, c. 575, § 1, 52 Stat. 854."

that the assertion of lack of jurisdiction came too late.

▋ Both these conclusions of Referee Hilliard are questionable. Lack of jurisdiction can always be raised—it never comes too late. United States v. United States Fidelity & Guaranty Co., supra, 309 U.S. at pages 513–514, 60 S.Ct. at pages 656–657. And on the facts recited, a waiver is, to say the least, questionable.

The cases cited by Referee Hilliard point out that the

"Consent to proceed summarily may be *formally* expressed, or the right to litigate the disputed claim by the ordinary procedure in a plenary suit, like the right to a jury trial, may be waived by failure to make timely objection." Cline v. Kaplan, 1944, 323 U.S. 97, 99, 65 S.Ct. 155, 156, 89 L.Ed. 97 [Emphasis added.]

citing MacDonald v. Plymouth County Trust Co., 1933, 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093.

In the case now before us there was certainly no formal consent, and the facts detailed to us show no waiver on the part of the government, nor any failure to make objection. Thus neither Cline v. Kaplan, supra, nor MacDonald v. Plymouth County Trust Co., supra, is apposite.

In Honeyman v. Hughes, 9 Cir., 1946, 156 F.2d 27, this Court held that one who makes no objection to an adjudication of his claim in a summary proceeding is not thereafter permitted to speculate on the outcome of the proceedings, and then, if he loses the decision, *for the first time understandably protest the procedure.* That was not the factual situation in In re Ward, nor was it here.

None of the other cases cited in In re Ward supports the "too late" theory, and none of the cases cited therein supports the theory that a balance may be struck

and a judgment awarded against the claimant when the claimant is the government having sovereign immunity (to wit: Cline v. Kaplan, supra; Alexander v. Hillman, 1935, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192; MacDonald v. Plymouth County Trust Co., supra; Columbia Foundry Co. v. Lochner, 4 Cir., 1949, 179 F.2d 630, 14 A.L.R.2d 1349; Florance v. Kresge, 4 Cir., 1938, 93 F.2d 784).

The doctrine of sovereign immunity may be waning—it may not, as Mr. Justice Frankfurter stated in National City Bank of New York v. Republic of China,[6] have been favored by the test of time. But it has existed for many years, is a "well settled rule" and ordinarily "an insuperable objection to allowance," [7] and until Congress says it does not exist, we are not prepared to strike it from the body of the law, or to ignore it.

▋ Express statutory consent to suit is essential to avoid the claim of the sovereign. That consent may not be found by implication in statutory provisions that omit all reference to the sovereign. Cf. United States v. Sherwood, 1941, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058. Consent given by one statute and not given in another raises a legitimate inference that such legislative amendment was by design, not by inadvertence. Cf. Johansen v. United States, 1952, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051.

▋ It is doubtful if any court could by interpretation of or implication from legislation alone, create a consent that was not specifically enunciated by the Congress. Only Congress has the power to grant jurisdiction over the sovereign.

▋ Failing to find a specific statutory waiver, and having no power to find one by implication or interpretation, we are bound by a long line of cases to hold that an affirmative judgment against the United States cannot be entered on a counterclaim without specific statutory authorization for affirmative

---

6. 1955, 348 U.S. 356, 75 S.Ct. 423, 99 L. Ed. 389.

7. United States v. Roth, supra, 164 F.2d at page 577.

relief against the government on the counterclaim as such. United States v. United States Fidelity & Guaranty Co., supra; United States v. Shaw, supra; Nassau Smelting & Refining Works v. United States, 1924, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190; United States v. Merchants Transfer & Storage Co., 9 Cir., 1944, 144 F.2d 324; In re Clayton Magazines, 2 Cir., 1935, 77 F.2d 852, 854.

This does not mean that a party sued by the government may not recoup or set-off, United States v. United States Fidelity & Guaranty Co., supra, at 511, or that the government's claim may not be contested, Gardner v. State of New Jersey, 1947, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504.

Nor is there merit to appellant's position that having once filed a claim, the sovereign is in the same position as a private suitor. United States v. Shaw, supra, and cases cited therein; United States v. United States Fidelity & Guaranty Co., supra; see, also, Case v. Terrell, 1870, 11 Wall. 199, 78 U.S. 199, 20 L.Ed. 134; United States v. Eckford, 1867, 6 Wall. 484, 73 U.S. 484, 18 L.Ed. 920. As already illustrated, affirmative recovery against the sovereign is not a corollary of the sovereign's right to sue or present a claim for bankruptcy adjudication.

We agree with the reasoning of Judge Lindley of the Seventh Circuit in the case heavily relied upon by the government, In re Greenstreet, Inc., 1954, 209 F.2d 660. Although that was a Tucker Act case, the specific question of consent under the Bankruptcy Act was considered. The court said:

"Nor can consent to be sued be implied from the terms of the Bankruptcy Act. The trustee insists that the Act applies to the United States just as it does to any other person. But the United States, as a sovereign, is not bound by a statute which in its general terms would divest it of pre-existing rights or privileges. United States v. Wittek, 337 U.S. 346, 69 S.Ct. 1108, 93 L.Ed. 1406;

United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. Moreover, the Supreme Court has specifically held that the United States is not subject to the general provisions of the Bankruptcy Act unless specifically named therein. Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 155, 32 S.Ct. 457, 56 L.Ed. 706; United States v. Herron, 87 U.S. 251, 260–264, 22 L.Ed. 275. The sovereign immunity from suit is a right and privilege which can be divested only by specific congressional enactment so providing. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894.

"The question remaining, therefore, is whether, by its intervention in the proceeding below, the United States consented to the jurisdiction of the court to entertain the counterclaim against the property. In the language of the Supreme Court, speaking in United States v. Shaw, 309 U.S. 495, 500–501, 60 S.Ct. 659, 661, 84 L.Ed. 888, 'As a foundation for the examination of that question we may lay the postulate that without specific statutory consent, no suit may be brought against the United States. No officer by his action can confer jurisdiction. Even when suits are authorized they must be brought only in designated courts. The reasons for this immunity are imbedded in our legal philosophy. They partake somewhat of dignity and decorum, somewhat of practical administration, somewhat of the political desirability of an impregnable legal citadel where government as distinct from its functionaries may operate undisturbed by the demands of litigants.' Again, in Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190, the court said, 'The objection to a suit against the United States is fundamental, whether it be in the

form of an original action, or a set-off, or a counterclaim. Jurisdiction in either case does not exist, unless there is specific congressional authority for it.'

"The postulate to be distilled from the cases is, as we have observed, that the United States, by initiating an action as a plaintiff, consents to the jurisdiction of the court to entertain any defensive plea including the right of set-off to the extent of the government's claim, but does not thereby consent to an affirmative judgment on a counterclaim. Stated differently, this consent empowers the court to decide all issues necessary to dispose of the general claim initiated by the government, but does not, as in the case of private litigants under the Federal Rules, extend to power to decide separate affirmative claims which the defendant may have by way of counterclaim. * * * The receiver argues that immunity was waived by the action of officers of the United States. This result is said to grow out of the fact that no answer to the counterclaim denying jurisdiction was filed. The argument, as we understand it, is that the government, by bringing suit, consented to the resolution of all questions that might be put in issue, as to the property owned by the government, and that, if the court did not have jurisdiction initially, failure of the government to answer acts as a waiver of immunity.

"This argument ignores the settled rule that the government cannot lose its immunity by any act or omission of its agents, and that consent to be sued cannot be implied from the action or inaction of its officers. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (failure to appeal an adverse judg-ment does not work an estoppel against the government); State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (stipulation by the United States Attorney for removal of a cause to a federal court does not give the court jurisdiction, where the state court in which the action was brought had none, notwithstanding the fact that the action might properly have been filed initially in the federal courts); Carr v. United States, 98 U.S. 433, 25 L.Ed. 209 (The Secretary of the Treasury could not waive the immunity of the United States from suit by participating in actions in state courts for possession of lands); North Dakota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484, certiorari denied 291 U.S. 672, 54 S.Ct. 457, 78 L.Ed. 1061. Cf., United States v. Ringgold, 8 Pet. 150, 8 L.Ed. 899. The fact that the property here involved was in the custody of the bankruptcy court initially did not, we think, defeat the application of the rule.

"We conclude that the District Court had jurisdiction to entertain and determine the trustee's counterclaims in so far as they ran against and asserted set-offs to lessen or defeat the government's unsecured claim for damages, but not to allow any part thereof, over and above the amount of the government's general claim, as an affirmative judgment against the United States, and, further, that the court had no jurisdiction to allow the trustee's counterclaim as a set-off against the government's title to property which belonged to it and which it was compelled to come to the court to reclaim." Id., 209 F.2d at page 667.

The judgment is affirmed.