In re OXFORD MARKETING, LTD., Bankrupt.

UNITED STATES of America, Plaintiff and Counter-Defendant,

v.

Laurence KALLEN, Trustee in Bankruptcy, Defendant and Counter-Claimant.

No. 75 B 994.

United States District Court, N. D. Illinois, E. D.

Jan. 4, 1978.

---

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for plaintiff and counter-defendant.

Laurence Kallen, Chicago, Ill., for defendant and counter-claimant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

In this appeal from the order of the bankruptcy judge in a Chapter XI arrangement

proceeding, the Government challenges the denial of its motion to dismiss the amended counterclaim filed by the trustee in bankruptcy.

On February 4, 1975, Oxford Marketing, Ltd. petitioned for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. On November 19, 1975, the bankruptcy court appointed Laurence H. Kallen as receiver of Oxford's property and adjudicated Oxford to be bankrupt. One month later, on December 24, 1975, the United States of America filed a complaint for reclamation on behalf of the Small Business Administration (SBA) against Kallen in his capacity as receiver and as trustee in bankruptcy. The trustee's answer admits most of the allegations of the complaint, but raises certain affirmative defenses and asserts a counterclaim against the SBA.

According to the undisputed allegations of the complaint, Oxford received a loan in 1973 from the Michigan Avenue National Bank of Chicago. In return, Oxford gave the bank a security interest in its equipment, inventory and accounts receivable. The bank then assigned the note and security agreement to the SBA. The note is now due and unpaid. To satisfy the outstanding indebtedness, the SBA seeks to foreclose its security interest and gain possession of the collateral.

In his amended counterclaim, the trustee alleges that about two months after Oxford filed its bankruptcy petition, the SBA wrongfully received $2,558 by garnishing Oxford's bank account at Michigan Avenue National Bank. The trustee claims that because the bank account belonged to the trustee as soon as Oxford's bankruptcy petition was filed, the SBA's receipt of these funds constituted the tort of conversion under Illinois law and therefore violated the Federal Tort Claims Act which incorporates state tort law by reference, 28 U.S.C. § 1346(b). In his prayer for relief, the trustee requests a money judgment against the SBA for $2,558 plus costs.

The Government moved to dismiss the amended counterclaim for lack of jurisdiction. It argued that the counterclaim was barred by principles of sovereign immunity, that it lacked a proper jurisdictional basis under either the Tucker Act, 28 U.S.C. § 1346(a)(2), or the Tort Claims Act, and that it raised issues unrelated to the SBA's reclamation petition and therefore was a permissive counterclaim falling outside the summary jurisdiction of the bankruptcy court. In its analysis of the Tort Claims Act, the Government asserted that the counterclaim failed to allege the requisite exhaustion of administrative remedies under 28 U.S.C. § 2675(a), failed to state a derivative cause of action under Illinois tort law, failed to allege a requisite act of negligence by an identifiable Government employee, and was based on theories of strict liability which are beyond the scope of the Act.

The bankruptcy judge denied the motion without an opinion. Although the basis for the court's decision was not expressly delineated in the written order, the grounds are vaguely discernible in the judge's remarks during the oral argument on the motion. The judge stated that the Federal Tort Claims Act afforded a jurisdictional basis for the counterclaim, even though he did not specify the applicable tort under state law. He also intimated that the counterclaim and the complaint contained a sufficient identity of issues to make it a compulsory counterclaim. By this analysis, both pleadings rested on the validity and nature of the SBA's rights as assignee of the security agreement. The complaint posited that the SBA's rights under the agreement had matured into a right to immediate possession of the collateral. The counterclaim posited that the bank improperly set-off $2,558 from Oxford's account and gave it to the SBA. The SBA succeeded to the bank's right to set-off the money when it became the assignee of the security agreement. In the judge's view, the SBA should raise its assigned right to set-off as an affirmative defense to the counterclaim rather than by a motion to dismiss. Therefore he denied the motion and ordered the Government to file an answer to the counterclaim.

■ On appeal, the Government contends that the bankruptcy court erred in finding jurisdiction under the Tort Claims Act, and that in any event the court lacked summary jurisdiction since the counterclaim was unrelated to the subject matter of its complaint for reclamation. We agree that the trustee's counterclaim was permissive in character. That finding by itself is sufficient to oust the jurisdiction of the bankruptcy court, since permissive counterclaims 1) are outside the scope of the court's summary jurisdiction and 2) are barred by principles of sovereign immunity. To understand how the concepts of summary jurisdiction and sovereign immunity converge to exclude permissive counterclaims, we must briefly review the theoretical foundations of these concepts. The unifying idea is that the filing of a lawsuit can only be construed as a limited consent to the presentation of counterclaims by the opposing party.

■ The jurisdictional boundaries of the bankruptcy court are defined by the interaction of Sections 2a(7) and 23 of the Bankruptcy Act, 11 U.S.C. §§ 11a(7) and 46. In describing those boundaries, courts have classified jurisdictional problems as falling within the "summary jurisdiction" of the bankruptcy court under § 2a(7) or within the "plenary jurisdiction" of state or federal courts under § 23. *See* 2 Collier on Bankruptcy, ¶ 23.02 (14th ed. 1976). If the controversy involves property in the actual or constructive possession of the bankruptcy court, that court has summary jurisdiction over claims pertaining to the property. If the controversy involves property in the actual or constructive possession of a third person asserting a substantial adverse claim, however, the bankruptcy court has no summary jurisdiction to adjudicate that person's claim upon a petition by the trustee, unless the claimant consents to jurisdiction. Absent such consent, the trustee must assert his rights against the creditor in a plenary action in state or federal court. *In re Warren*, 387 F.Supp. 1395, 1400 (S.D. Ohio 1975); *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); 2 Collier on Bankruptcy, ¶ 23.04 (14th ed. 1976).

■ The distinction between summary and plenary actions becomes significant when a creditor files a proof of claim or a petition for reclamation with the bankruptcy court. In these circumstances, the creditor is deemed to have consented to the summary jurisdiction of the bankruptcy court to adjudicate his claim. But there is some doubt whether the creditor also impliedly consents to summary jurisdiction of any counterclaim asserted by the trustee, or whether those counterclaims must be heard in a separate plenary proceeding brought by the trustee.

■ The clear majority of courts have held that summary jurisdiction only extends to counterclaims arising out of the same transaction as the creditor's claim and does not reach permissive counterclaims arising out of distinct and unrelated transactions. *In re Ranchero Motor Inn, Inc.*, 345 F.Supp. 1117 (D.Idaho 1972); *In re Warren, supra* at 1401; *Gill v. Phillips*, 337 F.2d 258, 264 (5th Cir. 1964); *In re Majestic Radio & Television Corp.*, 227 F.2d 152, 156 (7th Cir. 1955); *see also Katchen v. Landy*, 382 U.S. 323, 326 n.1, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); Collier on Bankruptcy, vol. 2 ¶ 23.08 and vol. 4 ¶ 68.20 (14th ed. 1976). Permissive counterclaims must be raised affirmatively in a plenary action. The theory is that a creditor impliedly consents to the adjudication of related counterclaims that reduce or extinguish his own claim. As stated in *Majestic Radio, supra* at 156:

No party can invite summary adjudication on only part of the relevant evidence relating to the subject matter of the claim. . . . [I]f you invite a Bankruptcy Court to review a set of facts for your benefit, you invite it to review all pertinent related facts even though they tend to prove your opponent's case.

But a claimant does not impliedly consent to unrelated counterclaims. Although a rule allowing unrelated counterclaims would reduce multiple litigation, it would also increase the risk to creditors who appear in bankruptcy court and might easily deter the presentation of claims where the

right to recovery is clear. *Daniel v. Guaranty Trust Co. of New York*, 285 U.S. 154, 162, 52 S.Ct. 326, 76 L.Ed. 675 (1932).

Courts have applied a parallel analysis to determine the scope of the Government's waiver of sovereign immunity when its complaint is answered with a counterclaim. It is fundamental that the United States may be sued only to the extent that it has waived its sovereign immunity. That immunity extends to counterclaims. *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). The defense is waived if the United States consents to suit, either by a statutory waiver or by the action of filing a lawsuit. Consistent with their definition of the scope of consent to summary jurisdiction, courts have held that when the Government sues it only consents to counterclaims arising out of the same transaction or occurrence which is the subject matter of the suit. *Federal Savings & Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1017 (7th Cir. 1969); *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967); *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir. 1944); *In re Greenstreet, Inc.*, 209 F.2d 660, 663 (7th Cir. 1954). Again, the consent does not extend to permissive counterclaims based on unrelated transactions. However, there is one respect in which the scope of consent under principles of sovereign immunity is narrower than that under concepts of summary jurisdiction. The Government does not waive sovereign immunity to counterclaims which meet the tests of relatedness but which claim relief in excess of or different in kind from that sought by the Government. *Quinn, supra* at 1017; *Frederick, supra* at 488.

Applying these principles to the present case, we believe that the trustee's counterclaim is unrelated to the subject matter of the Government's complaint for reclamation. Therefore it is both outside the scope of the bankruptcy court's summary jurisdiction and is barred by the doctrine of sovereign immunity. In its complaint, the Government presents a purely contractual cause of action and seeks to enforce its rights as assignee of a promissory note and a security agreement executed by the bankrupt. The note is now in default, and the Government wants to obtain possession of the bankrupt's collateral under the security agreement, consisting of Oxford's machinery, equipment, furniture, fixtures, inventory and accounts receivable. In his counterclaim, the trustee presents a purely tortious cause of action under the Federal Tort Claims Act. He claims that the SBA converted Oxford's bank account by using a garnishment order to extract $2,558 from the account at a time when ownership of the account had vested in the trustee in bankruptcy.

We see no logical relationship between these two claims. The counterclaim does not challenge the validity of the note, the security agreement or the assignment, nor does it involve any duties or obligations arising therefrom. It does not allege that the money withdrawn from the bank account is connected in any way with the collateral which the Government seeks in its reclamation petition. There is no allegation that the bank funds are proceeds of that collateral. There is no suggestion that the SBA used the allegedly illegal garnishment monies to satisfy the indebtedness on the note. On the contrary, since the complaint alleges that interest on the unpaid note began accruing on July 14, 1975 and the counterclaim alleges that the garnishment occurred on May 15, 1975, it appears that the garnishment preceded default and the accounts may not have overlapped. Finally, we fail to perceive how the trustee's affirmative defenses on the note and the trustee's counterclaim might be connected by a continuing course of conduct by the SBA. *Cf. Warshawsky and Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257 (7th Cir. 1977).

Our holding is consistent with two other decisions involving similar fact situations. In *Frederick v. United States, supra,* the SBA sued the guarantor of an overdue note to recover the outstanding indebtedness. The note was secured by a mortgage on a piece of real estate. The guaranty agreement empowered the SBA to purchase the

security but also imposed a duty to exercise good faith in preserving, applying and disposing of the security. In his counterclaim, the guarantor alleged that the SBA purchased the property at the foreclosure sale for an unconscionably low price. The court held that the counterclaim arose from the same transaction or occurrence as the Government's suit, since both the guarantor's obligation to pay and the SBA's obligation to properly handle the security were defined by the same guaranty agreement. In the present case, the parties' claims are not similarly united by terms, duties, obligations or subject matter arising out of the contractual documents identified in the Government's complaint.

In *In re Monongahela Rye Liquors, supra,* the Commonwealth of Pennsylvania filed proofs of claims for taxes due from a liquor dealer who had petitioned for reorganization under Chapter X of the Bankruptcy Act. The trustee in bankruptcy counterclaimed for money due the bankrupt for liquor sold to the Pennsylvania Liquor Control Board, a state instrumentality. The court held that the bankruptcy court lacked jurisdiction over the counterclaim, because it was unrelated to the state's tax claims and the state had not consented to suit on the unrelated counterclaim. Like taxes and accounts receivable, the debt and garnishment monies in the present counterclaim have no discernible connective tissue.

Here, the bankruptcy judge found that both the complaint and the counterclaim rested on the nature of the SBA's rights under the security agreement. He seems to have assumed that the money in the bank account was the proceeds of the collateral under the agreement, and that the SBA as assignee succeeded to the bank's right to set-off those bank deposits against the indebtedness on the note. These inferences are unsupported by the allegations in the counterclaim. Neither party filed any affidavits to accompany the Government's motion to dismiss. If there are non-record facts which can establish a relationship between the pleadings, they should be adduced in the proper manner and incorporated into an amended counterclaim.

Because we find no summary jurisdiction over the trustee's counterclaim, we need not address the Government's contentions that the counterclaim fails to state a claim or a jurisdictional basis under the Federal Tort Claims Act. Even assuming that a cause of action exists under that Act, and that the Act offers a statutory waiver of sovereign immunity, the counterclaim still presents unrelated matters which fall outside the bounds of the summary jurisdiction of the bankruptcy court. Nevertheless, since we have left the trustee with the option of presenting additional facts to tie his counterclaim with the SBA's lawsuit, we should note that we have serious doubts that the counterclaim states a claim for conversion under Illinois law.

The scope of the Tort Claims Act is coextensive with state tort law. 28 U.S.C. § 1346(b). The counterclaim alleges that the SBA converted money in the bankrupt's bank account. A bank deposit is a chose in action or debt. It is an intangible right, not specific property owned by the depositor or the successor trustee. Illinois follows the common law rule which did not recognize an action for conversion of intangible rights. *Kerwin v. Balhatchett,* 147 Ill.App. 561 (1909); *Siegal v. Trav-Ler Karenola Radio & Television Corp.,* 333 Ill.App. 158, 76 N.E.2d 802 (1st Dist. 1948) (abstract opinion); *Janes v. First Federal Savings & Loan Association,* 11 Ill.App.3d 631, 297 N.E.2d 255, 260 (1st Dist. 1973). Illinois courts do recognize a cause of action for conversion of commercial paper, such as a check, on the theory that the intangible right is merged into a specific document. *Hayes v. Massachusetts Mut. Life Ins. Co.,* 125 Ill. 626, 18 N.E. 322 (1888); *see* Prosser, Torts 81 (4th ed.). However, the counterclaim here contains no allegation that the trustee ever had title to or possession of a negotiable instrument representing the $2,558, or that such a negotiable instrument ever existed. Without such a right, the trustee may lack standing to sue either under common law principles or under Section 3–419 of the Uniform Commercial

Code, Ill.Rev.Stat. ch. 26, § 3–419. *See Twellman v. Lindell Trust Co.*, 534 S.W.2d 83 (Mo.App.1976) (only the holder or payee of a negotiable instrument may properly sue for conversion under § 3–419).

Although the viability of a conversion action is in doubt, the facts alleged in the counterclaim seem to fit within a cause of action for wrongful seizure and appropriation of property in the bankrupt's estate. In *State Bank of Chicago v. Cox*, 143 F. 91 (7th Cir. 1906), the court confronted a very similar factual situation and held that a trustee was entitled to recover money obtained by creditors by garnishment between the date the bankruptcy petition was filed and the adjudication of bankruptcy. The court did not address jurisdictional issues, other than the sufficiency of the alleged jurisdictional amount, but it is apparent from the factual statement that the trustee presented his claim by means of a plenary action in federal court rather than by a summary proceeding in bankruptcy court. In the present case, a plenary action would have to hurdle the additional barrier of sovereign immunity. If the trustee can amend his counterclaim to allege a logical relationship between it and the Government's complaint, however, the immunity doctrine would not be a jurisdictional obstacle. We leave these issues for resolution by the bankruptcy court.

The order of the bankruptcy court of July 20, 1976 is reversed and the case is remanded to that court for proceedings not inconsistent with this opinion.