## Mary Kerwin, Appellee, v. Thomas J. Balhatchett, Appellant.

### Gen. No. 14,183.

1. TROVER—*what allegations sufficient to sustain.*  A count in trover which alleges that the plaintiff lost the money in question and that the same came to the possession of the defendant by finding is a sufficient averment to sustain the fiction of the common law to support an action of trover.

2. TROVER—*when action of, does not lie.*  An action of trover does not lie if it appears that the money in question was voluntarily given by the plaintiff to the defendant to do certain things with, namely, to pay himself a debt which the plaintiff owed him and then to discharge other specified indebtedness of the plaintiff and to account to the plaintiff for the balance.

3. TROVER—*when does not lie.*  Trover lies for specific chattels wrongfully converted, and not for money had and received for payment of debts.  It does not operate on chattels generally, but specifically, such as money in coin or bills, animals, or other property capable of identification as being the actual property or thing wrongfully taken and converted.

4. APPEALS AND ERRORS—*when assignments of error sufficient to preserve rulings upon instructions.*  If it is assigned as a reason why a reversal should be ordered that the trial judge erred in overruling a motion for a new trial and if such a motion was made in writing, specifying as one of the grounds therefor the action of the court in giving a particular instruction, the propriety of such instruction is subject to review.

5. CAPIAS AD SATISFACIENDUM—*in what actions may issue.*  In an appropriate action, upon an appropriate showing of fraud, a *capias ad satisfaciendum* may issue to enforce the payment of a judgment rendered in an action of assumpsit.

Trover.  Appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding.  Heard in this court at the October term, 1907.  Reversed and remanded.  Opinion filed February 4, 1909.  Rehearing denied April 8, 1909.

GEORGE WILLARD, for appellant.

STAHL & LEWALD and GEORGE M. BAGBY, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Appellee made a motion to strike from the files a supplemental record filed pursuant to leave granted by this court, together with an abstract of said supplemental record, which motion the court reserved to the hearing. That motion is now denied.

Plaintiff recovered a judgment upon the verdict of a jury for $1,256.86, in an action of trover. While a declaration consisting of two counts was originally filed, plaintiff entered a *nolle prosequi* as to the first count, and the cause proceeded to trial under the second count and a plea of not guilty. Two juries have passed upon the facts, each rendering their verdict in favor of plaintiff. From the judgment rendered on the last verdict we are asked to review the record and reverse the judgment. We are convinced that neither the second count of the declaration nor the evidence of plaintiff states or furnishes facts supporting, or even tending to support, an action of trover. After stating in the second count that plaintiff lost the money in question, and that the same came to the possession of defendant by finding, which is a sufficient averment to sustain the fiction of the common law to support an action of trover, it proceeds to aver that defendant, well knowing the money to be plaintiff's except the sum of $176.50, refused to surrender the same, after repeated demands, and that defendant, after finding the money, promised plaintiff to pay certain debts of plaintiff, one for $184 and another for $90; that defendant failed to pay either, and that such failure was with malicious intent to financially ruin plaintiff. It is then averred that plaintiff, at the time defendant found her money, was in the laundry business, the receipts of which aggregated $3,000 a year and yielded a profit of $800 a year, and that the actions of defendant in detaining her money and not paying the two debts mentioned caused plaintiff to lose her laundry business, which was of the value of

$2,000. Pleading to this declaration and the verdict rendered on such issues might furnish a cure of the defects in this pleading, and we might seek the shield afforded by the verdict of the jury as establishing facts sufficient to prove the wrongful conversion of the money charged, if it were not for the erroneous instruction numbered ten given to the jury at the request of plaintiff.

Defendant was the medical attendant, at and before the time of the transaction in conflict, in the family of plaintiff, who had, just preceding this transaction, lost her husband by death. At the time of the death of her husband he was a member of the Ancient Order of United Workmen, and in virtue of such membership plaintiff was entitled to receive as an insurance benefit $2,000. At the time of the payment of this benefit plaintiff was ill and believed that she would not recover. Defendant attended her in this sickness. A Mr. Vail brought to plaintiff the check of the order for the $2,000. The undertaker who had buried her husband was present to collect his bill for such services. Defendant was also present and lifted plaintiff up in her bed into a sitting posture, so that she could, as she did, endorse her name on the back of the check. Vail and Bell went to the bank on which the check was drawn and cashed it. Bell, who was cashier of the bank, brought the money back to plaintiff. Two hundred and forty-five dollars were taken out of the $2,000 for house rent which plaintiff owed, before the balance of the money was placed upon the bed upon which plaintiff was lying. Bell then remarked to defendant that some one was waiting for him in his office, whereat defendant picked up all the remaining money but $550 and left. The undertaker's bill against plaintiff for burying her husband was $600, as he claimed, and when the money was counted after defendant had left, but $555 of it could be found. Plaintiff gave the undertaker $550, keeping but $5 for herself. Plaintiff, how-

ever, on further examination, materially varies this story. She says defendant told her that she was in a very critical condition, and that if she would leave the money with him until nine o'clock the next morning, the bank being then closed, he would give her three checks and pay her bills out of it, and "have a reckoning afterwards"; that although defendant afterwards gave her several checks with which to pay some pressing bills, he subsequently took them from her and destroyed them. At this time plaintiff owed defendant for services and disbursements about $170. When plaintiff several days afterwards asked defendant for her money, he said he would get it as fast as he could, although, he added, she "had all the money belonging to her". On cross-examination plaintiff testified that at the time defendant took the money she said to him, "Doctor, I am much obliged to you for your kindness"; and her daughter testified that when the doctor took the money her mother said "it was all right". This testimony is all irreconcilable with the claim that defendant took the money under such circumstances as made him liable to respond therefor in an action of trover. Whatever the reason may be for his taking the money, this evidence makes it clear that he took it with the knowledge and consent of plaintiff.

Instruction 10, to the giving of which defendant excepted and assigned as a reason for the granting of a new trial, is as follows:

"The court instructs the jury that if they believe from the evidence that when the twelve hundred dollars was given or handed over to the defendant, the plaintiff, Mrs. Kerwin, did not then owe him that sum of money, but did owe him $176.50, and that it was the understanding between them that the defendant was to pay himself out of such money the amount she so owed him and keep the balance for her until demanded by her or paid out on her request, and if you further believe from the evidence that she owed him no more than $176.50 at that time or since, and that

she demanded of him the balance of $1,023.50, and that he refused to pay her the same or any part thereof and has never paid her or for her account since that time any part of such sum of $1,023.50, and that he has converted the same for his own use, then you shall find for the plaintiff and for such amount with interest at the rate of five per cent per annum from the date of such demand''.

The court overruled defendant's motion for a new trial, and that action of the court is assigned on the record as error.

Plaintiff insists that the giving of instruction 10 is not subject to review in this court, because defendant has not assigned such action of the court upon the record for error. Defendant's motion for a new trial was in writing, and assigned as a reason why the court should grant a new trial, error in giving that instruction. We understand the rule to be that this action of the trial judge in giving that instruction is open to review, by the assignment as error the action of the court in overruling defendant's motion for a new trial.

Plaintiff relies upon the case of Grand Pacific Hotel v. Rowland, 88 Ill. App. 519, as being so similar in fact and law as to be controlling of our decision in this case. But the cases are not at all similar. In the Rowland case the hotel waiter having received a $500 United States bill with which to pay an account contracted by Rowland in the hotel restaurant, decamped with it. There was a clear unlawful conversion by the servant, in the ordinary course of his employment, which made the master liable for his tortious act. Not so here. The money was voluntarily given to defendant, to do certain things with—to pay himself the debt which plaintiff owed him and then to discharge other specified indebtedness of plaintiff and to account to her for the balance. The relation of debtor and creditor was thus created between them. Trover lies for specific chattels wrongfully converted, and not for money had and received

for payment of debts. It does not operate on chattels generally, but specifically, such as money in coin or bills, animals, or other property capable of identification as being the actual property or thing wrongfully taken and converted. Donaghue v. Henry, 4 E. D. Smith, 162; Kreider v. Fanning, 74 Ill. App. 230; Loomis v. Stave, 72 Ill. 623; Hayes v. Ins. Co., 125 *ibid.* 626; Sec. 524, 2 Cooley on Torts, p. 857.

In Loomis v. Stave, *supra,* it was held that a surplus arising upon the sale of bonds sought to be recovered in an action of trover could not be recovered in that action. And in Donaghue v. Henry *supra,* that set-off could not be interpolated as a defense in a tort action in the nature of trover under the New York code. In Cooley on Torts, *supra,* the text writer lays it down as an axiom of the law that trover will not lie for money given to a defendant to be used for a particular purpose, which defendant converts to his own use or which may be found due upon an accounting.

The instruction complained of follows the evidence, and the second count of the declaration, and is not an instruction in trover. By its directions the jury are in effect required to state an account between the parties in relation to the money entrusted to defendant's keeping, to be paid out and accounted for in the manner which plaintiff claims was agreed when she allowed defendant to take it away. The instruction starts out by telling the jury "that if they believe from the evidence that when the twelve hundred dollars was given or handed over to the defendant, the plaintiff did not then owe him that sum of money, but did owe him $176.50", etc., inhibits the holding that the money was either tortiously taken or retained.

It is somewhat regrettable that counsel for plaintiff should have mistaken the form of action in which to prosecute his client's apparently meritorious claim, thereby necessitating another trial upon reformed pleadings. The action of trover is one of the survivals of the common law in this jurisdiction, abolished many

years since in the country of its origin. It is an ancient remedy, involved in technicality of procedure and environed with legal fiction; but he who invokes it must maintain the cause in accord with precedent established for its adjudication. This court is not unmindful that the purpose of counsel in resorting to an action of trover was apparently to enable an enforcement of the judgment expected by the drastic process of a body execution. If there was actual fraud in the contracting of the debt, and such fraud is established by the proofs in an assumpsit action, it does not follow that plaintiff would not be entitled to the writ of *capias ad satisfaciendum* to enforce such a judgment. Section 1, Chapter 16, R. S., title "Bail in Civil Cases", expressly includes assumpsits at law, and if the nature of the case stated develops fraud in fact, and such fraud constitutes a tort in law, the same remedies may be had in an action of assumpsit as in an action which is brought in form as a tort action. It was in effect so held in an action of debt in Parker v. Follensbee, 45 Ill. 473. When the case again reaches the trial court, plaintiff will have the right, if she is so advised, to change her form of action from trover to assumpsit.

For the errors indicated, the judgment of the Superior Court is reversed and the cause remanded for a new trial, in accord with the views here expressed.

*Reversed and remanded.*