(No. 45931.—

BILLY F. JANES *et al.*, Appellants, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BERWYN *et al.*, Appellees.

*Opinion filed May 29, 1974.—Rehearing denied June 28, 1974.*

Frank Glazer and William V. Johnson, of Glazer and Cohan, of Chicago, for appellants.

Gomberg and Sharfman, Ltd., of Chicago (Davis L. Gomberg and Robert J. Sharfman, of counsel), for appellee First Federal Savings and Loan Association of Berwyn.

Nicholas S. Limperis, of Chicago, for appellee Irving Federal Savings and Loan Association.

Francis J. Higgins, of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellee Chicago Title & Trust Company.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

Billy F. Janes and Marie Janes brought this action in the circuit court of Cook County against the First Federal Savings and Loan Association of Berwyn (Berwyn), the Irving Federal Savings and Loan Association (Irving), and the Chicago Title and Trust Company (Chicago Title). Each of the defendants filed a motion to strike and dismiss the amended complaint and for summary judgment, and the motions were granted and judgment was entered in favor of the defendants. The Appellate Court, First District, affirmed (11 Ill. App. 3d 631), and we allowed leave to appeal.

The action purports to be brought by the plaintiffs on their own behalf and on behalf of all others similarly situated. It is concerned with the charges for title examination and title insurance in connection with two real estate transactions. In one of them the Janeses purchased property, and to finance the purchase obtained a mortgage from Berwyn. In the other transaction the Janeses sold real estate, and the purchase was financed by Irving. In connection with each transaction title insurance was purchased from Chicago Title.

Count I of the amended complaint names Berwyn as defendant, and describes the purchase transaction which was financed by Berwyn. It alleges that Berwyn ordered "on behalf of Plaintiffs" a preliminary report and title insurance policy; that Chicago Title submitted its invoice for the preliminary report and title insurance policy to Berwyn and suggested an apportionment of that cost between the buyer and the seller; that the invoice was paid from proceeds of the plaintiffs' loan from Berwyn; that thereafter Chicago Title gave to Berwyn "a ten per cent

discount or rebate from the full amount of the bill originally issued"; and that Berwyn retained the discount "as an illegal profit in the making of the loan." It is also alleged that the retention of the discount or rebate was a wrongful conversion or unjust enrichment of Berwyn, and that the retention, without disclosure to the plaintiffs, violated Federal Reserve Regulation Z, Section 226.4. Count I also contains allegations designed to sustain the complaint as a class action.

The trial court did not pass upon the class action aspects of the amended complaint, and in view of our disposition of the matter we find it unnecessary to describe or discuss them.

Count I prays for a declaration that the practice of Berwyn "in accepting discounts or rebates *** without disclosure, or credit, or payment to its customers of such discounts or rebates violates Federal [Reserve] Regulation Z, Section 226.4 and constitutes an unjust enrichment on the part of [Berwyn] or is held in trust [sic] for Plaintiffs," and it requests an injunction to restrain the practice complained of as well as a declaration that the plaintiffs are entitled to refunds and an accounting.

Count II of the amended complaint names Irving as defendant, and contains substantially similar allegations with respect to the transaction in which the plaintiffs sold real estate to persons whose purchase was financed by a mortgage loan from Irving. Substantially similar relief is prayed for in this count.

Count III names Chicago Title as a defendant, describes the transactions alleged in counts I and II and alleges that the defendant savings and loan associations paid the title charges from the proceeds of the respective loans; that Chicago Title, "knowing that the Defendant Savings and Loan Associations do not pay over to purchasers or sellers, or credit purchasers or sellers, with the ten percent discount or rebate," continues to pay that discount or rebate; and that Chicago Title, knowing who

the parties to the real estate transactions were, conspired with the savings and loan associations to unjustly enrich them, or alternatively to deprive the plaintiffs of funds that were rightfully theirs. The relief sought is that the court enjoin Chicago Title from offering discounts to preferred customers without offering such discounts to all customers.

Berwyn's "motion to dismiss and for summary judgment" asserted that there "are numerous types of arrangements and provisions concerning the customary prompt payment allowance referred to in the complaint," and it asserted that the complaint alleged no legal basis for requiring "a passing on or accounting for a prompt payment allowance received by a lender." It further asserted that under the terms of Federal Reserve Regulation Z, disclosure of the "prompt payment allowance" was not required. Berwyn's motion was accompanied by the affidavit of its president, George F. Thomas, which stated that in connection with its loans, Berwyn orders preliminary reports and title insurance and stated that the preliminary report of title ordered by Berwyn "is many times utilized by parties to the real estate transaction and paid for as the parties to the transaction agree." The affidavit also asserted that there are numerous ways of ordering and paying for preliminary reports and title insurance and stated: "Most title reports including the report referred to in the complaint are paid for by the seller and portions are prorated between the buyer and seller at the time of closing, although said report is ordered by the lender for its own purpose."

Irving's "motion to dismiss and for summary judgment" asserted that the amended complaint failed to allege any contract with Irving with respect to the title charges described in the amended complaint, and that disclosure of the charges in question was not required by Federal Reserve Regulation Z. The affidavit of Edwin M. Lake, president of Irving, recites that it orders preliminary

reports on title for its own use and utilizes them for its benefit and the benefit of borrowers. It also alleges that in the instance described in the amended complaint, Irving did not deal with the plaintiffs and did not look to the plaintiffs for the payment of any title bill. It alleges that it pays title bills promptly when due "and receives from time to time whatever prompt payment allowance is customarily allowed." The affidavit further states:

"That this Association has no agreement with the CHICAGO TITLE AND TRUST COMPANY or any title insurance company in connection with preliminary reports on title, other than to pay for the customary prevailing charges in the area for such service. Ultimately, the Association charges all costs in connection with title work to the Buyer, or other arrangements as may be made between the Association and the Buyer applying for a mortgage loan, or whatever directions the Buyer may give to this Association in connection with title charges."

The motion of Chicago Title to dismiss the complaint and for summary judgment was based upon the assertion that the amended complaint failed to allege any acts of conspiracy, any conspiratorial agreement between the parties or any illegality on the part of Chicago Title. The affidavit of John Waddell, senior vice-president of Chicago Title, stated that it "has provided a monthly prompt payment allowance to Savings and Loan Associations which have opened a credit account with CT&T and have themselves agreed to pay all charges on the account by the 10th day of the month following the date of the invoice sent by CT&T." The affidavit further recited: "The allowance is dependent upon payment of the invoice by the Savings and Loan Association on or before the 10th day of the month following the date of the invoice, subject to extensions made to accomodate (a) mailing and processing delays, (b) items billed on the last three days of a month, and (c) reasonable explanation of delay by a Savings and Loan Association which has a good payment record."

The affidavit also stated that the ten percent allowance reflects recognition by CT&T of the following factors:

"(a) Savings and Loan Associations personally undertake to pay the charges, pursuant to a written agreement in the form attached hereto as Exhibit 1, regardless of whether the real estate transaction in question is consummated and regardless of whether they are able to obtain subsequent reimbursement of such amounts from their borrowers. By assuming contractual responsibility for payment of the charges, the Savings and Loan Association relieves CT&T of the substantial collection burden which would exist if CT&T were required to look for payment to the thousands of Savings and Loan borrowers and sellers of real estate.

(b) The Savings and Loan Associations also render services which result in certain operating economies which would not be realized if CT&T were required to deal with each customer of a Savings and Loan Association as an individual CT&T customer. These include (i) the filling out in savings and loan offices of applications for title policies, thereby eliminating CT&T's need for additional order consultants, (ii) the assembling by the Savings and Loan Associations of such documents as judgment affidavits, mechanics lien waivers and tax receipts, which they submit with the application, thereby eliminating labor which would otherwise be involved in CT&T's consideration of the title and (iii) reduction in CT&T's bookkeeping and accounting costs through the billing of all title charges to the account of the Savings and Loan Association instead of to many individual borrowers."

Decision of this case has been made unnecessarily difficult because the trial and appellate courts and the parties have not drawn a sufficiently sharp distinction between the proper inquiry on a motion to dismiss and a motion for summary judgment. Indeed, the motions filed by the savings and loan associations seem predicated on the assumption that there exists a hybrid procedure whereby a defendant may challenge the legal sufficiency of a complaint and, at the same time, answer it, file affidavits stating facts which would be admissible at trial, and

demand judgment on the merits. Chicago Title's motion, to be sure, is phrased in the alternative, but apparently it also contemplates such a hybrid. The Civil Practice Act, however, establishes two distinct procedures. Section 45 (Ill. Rev. Stat. 1973, ch. 110, par. 45) provides that, upon motion specifically setting forth those particulars in which a pleading is substantially insufficient in law, "the court may enter appropriate orders either to permit or require pleading over or amending or to terminate the litigation in whole or in part." Section 57, on the other hand, explicitly governs motions for summary judgment. It provides that "[a] defendant may, at any time, move with or without supporting affidavits for a summary judgment," and that the opposing party may file counteraffidavits prior to or at the hearing on the motion. Summary judgment is to be rendered "forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." To combine an inquiry into whether a pleading is sufficient to state a cause of action with an examination which almost necessarily assumes that a cause of action has been stated and proceeds to determine whether there are any material issues of fact to be tried is likely to confuse both the parties and the court. If this sort of procedure were sanctioned, it would be left to the reviewing courts to sort matters out and to remand with directions to allow leave to amend the complaint, to require plaintiff to file counteraffidavits, or to provide other appropriate instructions. We therefore expressly disapprove the procedure followed in the trial court. The defendants in this case should have first challenged the legal sufficiency of the complaint. When, and only when, a legally sufficient cause of action had been stated should the court have entertained the motions for summary judgment and considered the affidavits filed in support thereof.

To remand this case for proceedings to conform with these views, however, would occasion delay and waste of judicial resources. And since the appellate court has made its own determination as to whether a cause of action was stated and also as to the propriety of a summary judgment, we will consider those questions. Because the legal sufficiency of the plaintiffs' claim against each of the defendants is governed by different considerations, we shall discuss each of the counts separately.

With respect to Berwyn, the plaintiffs were borrowers. The amended complaint and attached exhibits showed that in connection with that transaction, title charges were incurred in the total amount of $193.75 of which $126.75 was charged to the seller and $67 was charged to the buyers. The loan statement furnished to the plaintiffs by Berwyn recited the total amount of the loan that had been made to them and the purpose and amount of each of the disbursements which they authorized Berwyn to make from that fund. It contained the following statement to be signed by the plaintiffs and by Berwyn: "The undersigned acknowledge the receipt and correctness of this Loan Statement and authorize and ratify the disbursement of the funds as shown above."

The opinion of the appellate court apparently read the statement in the amended complaint that Berwyn had "unlawfully converted the funds of the plaintiffs" as an attempt to assert a cause of action in trover. And it therefore considered as its first inquiry "whether the legal elements of a conversion, such as would support an action in trover, are present here," and said:

"*** The traditional action of trover '*** does not operate on chattels generally, but specifically, such as money in coin or bills, animals, or other property capable of identification as being the actual property or thing wrongfully taken and converted.' (*Kerwin v. Balhatchett*, 147 Ill. App. 561, 566.) This same decision

cites sec. 524, 2 Cooley on Torts, page 857, as authority for "*** an axiom of the law that trover will not lie for money given to a defendant to be used for a particular purpose, which defendant converts to his own use or which may be found due upon an accounting.' (See 147 Ill. App. at 566.) This necessary element of specific property is completely lacking in the case at bar." 11 Ill. App. 3d at 637.

Some of the hallmarks of the old common law action of trover, such as the allegation of a "casual finding and losing," were indeed unique to that action. But the expression that one "converted to his own use the money of another" was not peculiar to that form of action. It is an expression that has been in common use in many areas of the law. (See, e.g., Ill. Rev. Stat. 1957, ch. 38, par. 207; People v. Roth, Inc. (1952), 412 Ill. 446, 451.) But there was no occasion in 1973 for a determination as to whether or not the amended complaint in this case fit the requirements of the traditional action of trover. Even the case relied upon by the appellate court, Kerwin v. Balhatchett (1909), 147 Ill. App. 561, was remanded so that the declaration could be amended to state the cause of action in assumpsit.

The appellate court then considered the possibility of the existence and breach of a trust, but rejected any right to recover on such a theory on the ground that "the relationship of mortgagor and mortgagee does not of itself show the existence of a confidential or fiduciary relationship." More is involved here, however, than a relationship of mortgagor and mortgagee "of itself," and in our opinion count I of the complaint alleges a fiduciary relationship. The loan statement attached to the complaint is an accounting by Berwyn for its disposition of the money which the plaintiffs had borrowed from it. The statement recites the amount borrowed by the plaintiffs, and it contains their authorization to Berwyn to make specific dispositions of that sum of money. Any disposition of

those funds for a purpose other than as authorized by the plaintiffs was improper and a violation by Berwyn of the duty which it owed to the plaintiffs. With respect to the sum of $193.75 designated as title charges, the plaintiffs authorized Berwyn to pay $126.75 to the seller, and with respect to the sum of $67, the plaintiffs authorized Berwyn to pay that amount to Chicago Title. They did not authorize Berwyn to retain any portion of either amount for itself, whether by way of discount or rebate.

The appellate court summarized its view of the plaintiffs' right to recover on a contractual theory of unjust enrichment in these terms: "The only complaint is that after the transaction had been entirely closed, and after the bill had actually been paid, a portion thereof was remitted by the Title Company to Berwyn or Irving as payment for or recognition of their services rendered." (11 Ill. App. 3d at 639.) We do not agree with this appraisal. The principle that runs consistently through the law draws no distinction upon the ground that the discount, rebate, or bonus was received after the primary task was completed. So the Restatement of Restitution, section 197, states:

"Sec. 197. BONUS OR COMMISSION RECEIVED BY FIDUCIARY.

Where a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary.

*Comment:*

a. *Bribes and commissions.* The rule stated in this Section is applicable not only where the fiduciary receives something in the nature of a bribe given him by a third person in order to induce him to violate his duty as fiduciary, but also where something is given to him and received by him in good faith, if it was received for an act done by him in connection with the performance of his duties as fiduciary. Thus, if a trustee, or corporate officer, or an agent entrusted with the management of property insures the property in a company of which he is an agent, and he receives from the company a commission

for placing the insurance, he is accountable for the commission so received and holds it upon a constructive trust for his beneficiary (see Restatement of Trusts, sec. 170, Comment *n;* Restatement of Agency, sec. 388, Comment *a*).

\* \* \*

*c. Where no harm to beneficiary.* The rule stated in this Section is applicable although the profit received by the fiduciary is not at the expense of the beneficiary. Thus, where an agent to purchase property for his principal acts properly in making the purchase but subsequently receives a bonus from the seller, he holds the money received upon a constructive trust for his principal. The rule stated in this Section, like those stated in the other Sections in this Chapter, is not based on harm done to the beneficiary in the particular case, but rests upon a broad principle of preventing a conflict of opposing interests in the minds of fiduciaries, whose duty it is to act solely for the benefit of their beneficiaries."

And the Restatement (Second) of Agency, section 388, states:

"Sec. 388. Duty to Account for Profits Arising out of Employment.

Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.

Comment:

*a.* Ordinarily, the agent's primary function is to make profits for the principal, and his duty to account includes accounting for any unexpected and incidental accretions whether or not received in violation of duty. Thus, an agent who, without the knowledge of the principal, receives something in connection with, or because of, a transaction conducted for the principal, has a duty to pay this to the principal even though otherwise he has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount. See sec. 203 of the Restatement of Trusts.

Illustrations:

\* \* \*

3. A, acting for P, takes out insurance on P's premises, advancing the amount of the premium and having the insurance taken in his own name to secure his advances. The insurance company declares a rebate or dividend upon the premiums paid. A is under a duty to credit this to P in spite of a contrary usage among insurance agents, not known to P."

We hold that count I stated a cause of action for breach of fiduciary duty with respect to the title insurance Berwyn procured in behalf of the plaintiffs.

Despite the recent Federal district court decision in *Spens v. Citizens Federal Savings & Loan Association of Chicago Heights* (N.D. Ill. 1973), 364 F. Supp. 1161, we have concluded that count I of the amended complaint in this case also stated a legally sufficient cause of action under the Truth in Lending Act of 1968, 15 U.S.C. sec. 1601 *et seq.*, and the regulations promulgated by the Board of Governors of the Federal Reserve System pursuant to the authority delegated to it by 15 U.S.C. sec. 1604 (1970), which authorizes the Board to make such "classifications, differentiations, or other provisions *** as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith." The statute (15 U.S.C. sec. 1640 (1970)) provides for civil liability for failure to disclose required information, and vests jurisdiction in the United States district courts "and other courts of competent jurisdiction."

It is true that the Act excludes from its disclosure requirements the following items, among others,

"when charged in connection with any extension of credit secured by an interest in real property ***:

(1) Fees or premiums for title examination, title insurance, or similar purposes."

15 U.S.C. sec. 1605(e) (1970).

The Board of Governors, implementing this provision by regulation (12 C.F.R. sec. 226.4(e) (1973)), required

that the items excluded be "bona fide, reasonable in amount, and not for the purpose of circumvention or evasion of this part." The complementary provision of the regulations governing the Federal savings and loan system (12 C.F.R. sec. 545.6—10) prohibits associations from receiving any "discount, rebate, or commission" in connection with initial loan charges, including charges incurred in insuring title, unless that discount, rebate or commission is "allowed as compensation for services performed."

In the present case the plaintiffs authorized Berwyn to retain a "Service Fee" in the amount of $35, and also authorized an "Appraisal Fee" of $25. As we understand the Federal regulations, the savings and loan associations are allowed to retain discounts only for services actually performed, and their charges to loan customers must be *bona fide,* reasonable, and not intended to circumvent the disclosure requirements. In our opinion, if the plaintiffs can prove that retention of the discounts involved in this case rendered the charges exempted from the disclosure requirements unreasonable in amount or not *bona fide,* they should be able to avail themselves of the civil remedies set forth in 15 U.S.C. sec. 1640 (1970). The question of *bona fides* is obviously closely related to the question whether the discounts were properly retained as compensation for services actually performed.

We hold, therefore, that count I of the amended complaint should not have been dismissed.

Even if we assume that the summary judgment procedure utilized by Berwyn was proper, judgment should not have been entered in its favor. The affidavit of its president, the only affidavit in support of its motion, did not refer at all to the specific transaction described in the amended complaint. It did not confront the question of what fiduciary duty, if any, arose under the circumstances and whether it was breached, and nowhere did it counter the allegations that the Truth in Lending Act had been violated. Instead it recited in general terms that in the

course of its business it "requires for its own use a preliminary report of title or other satisfactory evidence that its lien on the security property is the first mortgage lien," and to that end it orders a preliminary report of title which "is many times utilized by parties to the real estate transaction and paid for as the parties to the transaction agree." The affidavit then stated that there are "various methods of ordering and paying for the preliminary report of title and subsequent title insurance" and enumerated ten or more such methods, including the following:

"f. Most title reports including the report referred to in the complaint are paid for by the seller and portions are prorated between the buyer and seller at the time of closing, although said report is ordered by the lender for its own purpose."

The parenthetical statement in the affidavit that the title insurance referred to in the complaint was paid for by the seller is contradicted by the closing statement, prepared by Berwyn, which shows that the title charges in this case were paid for out of the proceeds of the money loaned by Berwyn to the plaintiffs, in accordance with the authorization of the plaintiffs.

If we look beyond the affidavit of Berwyn to that of Chicago Title, the situation is no different. Although the ten percent retained is referred to freely as a "prompt payment allowance," there is no statement as to the date upon which the invoice of Chicago Title was rendered to Berwyn, or the date upon which it was paid or the source of the funds with which it was paid. And although there are references to services rendered by Berwyn, there is no effort to particularize those services or to explain why they were not compensated for by the service fee of $35 which the plaintiffs authorized Berwyn to disburse to itself. Hence, the "summary judgment" the trial court entered was erroneous because the affidavits filed did not demonstrate the absence of a material triable issue of fact. *Cf. Fooden v. Board of Governors* (1971), 48 Ill.2d 580.

With respect to the transaction involved in count II of the amended complaint, the plaintiffs were sellers, and the defendant, Irving, financed the purchase of the property. It is alleged that the defendant required a preliminary report of title and title insurance from Chicago Title "and that plaintiffs pay the customary pro rate [*sic*] share of seller of the charges made by" Chicago Title; on information and belief it is alleged that Irving received and retained a ten percent discount of the "sellers customary charges," and that the retention is a wrongful conversion of funds belonging to the plaintiffs, or in the alternative that the retention of such funds constitutes an unjust enrichment. In our opinion this count does not state a cause of action. It alleges no relationship of any kind between Irving and the plaintiffs, and it does not allege that Irving was at any time in possession of funds belonging to the plaintiffs. The cause of action under the Federal statute is good only as against Berwyn, because Irving was required to make disclosures under that statute only to those to whom it was extending credit (see 15 U.S.C. sec. 1639 (1970)), and the civil remedies under 15 U.S.C. sec. 1640 (1970) are available only to one to whom disclosures are required to be made.

With respect to count III, there is no allegation of any contractual relationship between the plaintiffs and Chicago Title or that Chicago Title held any funds belonging to the plaintiffs. Indeed, there is no allegation of any fact which suggests that the breakdown into customary sellers' share and customary buyers' share was not requested by the buyers or the sellers or that they had not agreed that the title charges would be allocated in the manner indicated in the closing statement. The substance of the complaint is that the building and loan associations did not pass on to the plaintiffs the ten percent discount received from Chicago Title after its charges were paid. There is no allegation of any conduct on the part of Chicago Title which prevented the associations from doing so. The relief

prayed is that the court enjoin Chicago Title "from offering discounts to preferred customers without offering such discounts to all customers." No legal theory is suggested upon which such relief could be predicated.

For the reasons stated we have concluded that the complaint was properly dismissed as to Irving Federal Savings and Loan Association and the Chicago Title and Trust Company, and the judgments of the trial and appellate courts, insofar as they relate to those defendants, are affirmed.

With respect to the First Federal Savings and Loan Association of Berwyn, we are of the opinion that the amended complaint stated a cause of action and that the trial and appellate courts erred in holding to the contrary. The judgment with respect to that defendant is therefore reversed, and the cause is remanded to the circuit court of Cook County for further proceedings.

*Affirmed in part and reversed in part and remanded.*