THOMAS DELGATTO, Plaintiff-Appellant, v. BRANDON ASSOCIATES, LTD., Defendant-Appellee (Anne Marie Delgatto, Plaintiff).

First District (5th Division)   No. 87—0352

Opinion filed June 10, 1988.—Rehearing denied August 11, 1988.

Christopher T. Hurley, of Susan E. Loggans & Associates, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, Richard Foster III, and David E. Barry, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

This appeal follows the entry of an order of the circuit court of Cook County granting summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) in favor of defendant Brandon Associates, Ltd., as to count III of plaintiffs' complaint at law.

We reverse and remand.

The following is pertinent to our disposition.

On May 20, 1983, plaintiffs filed a complaint at law against Brandon Associates, Ltd. (Brandon), and several medical defendants for injuries sustained after Thomas Delgatto was involved in an accident in conjunction with the renovation of a building at 19 South La Salle Street in Chicago. Following several amendments, on November 12, 1985, a fourth amended complaint, consisting of four counts, was filed naming only Brandon as a defendant. This appeal concerns only count III of that complaint.

Count III alleged that on May 21, 1981, Thomas Delgatto (plaintiff), a sheet metal worker employed by Wagner Heating and Ventilation, was injured when an air duct assembly, part of the renovation project, struck him in the back. The complaint stated that a radiator had been placed up against the duct work and, as plaintiff was moving the radiator to gain access to the duct work, the injury occurred. Liability was premised on allegations that plaintiff's injuries were the result of defendant Brandon's failure to comply with provisions of the Structural Work Act (sometimes referred to as the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) in one or more of the following ways:

"a. Failed to provide a proper support for the piece of duct work thereby rendering said duct work in an unstable position;

b. Provided a scaffold, support or other mechanical contrivance, for the support of the duct work which was unstable and unsteady;

c. Failed to provide a scaffold, support, or other mechanical contrivance for the support of the duct work which could have safely and adequately supported the duct work while the plaintiff was working in that area;

d. Failed to provide the plaintiff with an adequate support, scaffold, or other mechanical contrivance which could have enabled him to avoid being hit by the duct work on the date of his accident."

Defendant's answer denied, *inter alia,* the material allegations of count III.

On March 10, 1986, without prior challenge to the legal sufficiency of any portion of the complaint, defendant filed a motion styled "Motion For Summary Judgment As To Count III Of The Plaintiff's Fourth Amended Complaint," in which defendant contended that count III failed to state a cause of action because it did not allege plaintiff's injury had a connection with the hazardous nature of a device contemplated under the Structural Work Act. Portions of plaintiff's own deposition testimony were attached for the purpose of establishing plaintiff's activities immediately preceding the accident. A supporting memorandum of law was also filed which reiterated defendant's attack on the complaint based on the failure of the complaint to state a cause of action under the Act.

Hearing on defendant's motion commenced on July 7, 1986. At the conclusion of argument heard that day, counsel for plaintiff moved for a continuance in order to obtain an expert's affidavit for the intended purpose of establishing that industry practice obligated defend-

ant to provide a "support or stay" for use in the assembly of the air duct system. That motion was renewed during the continuation of the hearing on the following day, but was denied due to the failure of plaintiff's counsel to file an affidavit in conjunction therewith in compliance with the requirements of Supreme Court Rule 191(b) (107 Ill. 2d R. 191(b)). Finding "no duty whatsoever" under the Structural Work Act, the trial court granted defendant Brandon's motion.

On August 1, 1986, plaintiff filed a motion to vacate the order of summary judgment. In support of the motion, plaintiff filed a memorandum of law and attached thereto the affidavits of plaintiff and of Lindsay Hayes, a purported safety expert, as well as copies of advertisements for mechanical lifts. At that time, defendant also moved to render the July 8, 1986, summary judgment order final and appealable and to strike the affidavits and supporting materials filed in support of the motion to vacate.

Hearing on all motions proceeded on January 26, 1987. Following the hearing, an order was entered: (1) striking plaintiff's affidavits and supporting materials in support of the motion to vacate as insufficient under Supreme Court Rule 191(b); (2) denying leave to amend the affidavits; (3) denying plaintiff's motion to vacate the July 8, 1986, summary judgment order as to count III; and (4) granting defendant's motion to render that order final and appealable.

This appeal followed.

Opinion

Before we consider the substantive issue here presented under the Structural Work Act, we are compelled to address the procedural posture of the matter before us.

■ This appeal has been unnecessarily clouded by allowance of inartful motion practice below. The difficulty here stems from a failure to distinguish between a motion which seeks to challenge an action based on failure of the pleadings to raise a legal controversy as opposed to a motion which seeks summary judgment in a cause. Our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 1—101 *et seq.*) makes a clear distinction between these two types of motions. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 436 N.E.2d 598.) Properly, when judgment in an action is sought on the premise that no cause of action exists under the allegations of the complaint, that attack should be made pursuant to a motion for judgment on the pleadings. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(e); *Abrams v. Illinois College of Podiatric Medicine* (1979), 77 Ill. App. 3d 471, 395 N.E.2d 1061.) A motion for summary judgment, however,

almost necessarily assumes that a cause of action has been stated and proceeds to examine whether there exists any material issues of fact to be determined through a full trial. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.) Only after a challenge to the legal sufficiency of the complaint has been presented, and successfully overcome, should a trial court proceed to entertain a motion for summary judgment. *Janes*, 57 Ill. 2d at 406, 312 N.E.2d at 609; see also Laycock, *Dispositive Pre-Trial Motions in Illinois—Sections 45, 48, & 57 of the Civil Practice Act*, 9 Loy. U. Chi. L.J. 823 (1978).

■ Contrary to the dictates of meticulous practice, counsel for defendant Brandon ignored the above procedure and the court below failed to require conformity therewith. As a result, we are not only presented here with review of a motion for judgment on the pleadings masquerading as one for summary judgment, but consequently, have before us a specious issue respecting the denial of leave to produce evidence for the intended purpose of raising an issue of fact when the disposition of the motion concerns only an issue of law. However, to remand for the purpose of having before us the proper motion, devoid of reference to extraneous material in support, not only impedes judicial economy, but is also unnecessary. As is clear from a fair reading of the motion, review of the transcripts of the hearings had below, and examination of the parties' respective briefs on appeal, the singular issue presented is whether the defendant had a duty, under the Act, as alleged in count III, to provide plaintiff with a device to either support the duct work itself, or to prevent the duct work from striking plaintiff. Although a portion of the motion referred to statements contained in plaintiff's deposition, that reference added nothing to the legal theory behind the motion nor altered its gravaman. Further, although the trial court judge below granted "summary judgment," the record indicates the ruling was based on the determination that no duty was owed under the Act to provide such a support.

Therefore, we do not hesitate to treat defendant Brandon's motion in the instant action as one for judgment on the pleadings, disregarding reference to material beyond the allegations of plaintiff's complaint. There is no factual dispute at issue precluding an examination of the Act to determine whether, as the trial court concluded, no duty was owed to plaintiff under the allegations of count III. Accordingly, we deem to be moot plaintiff's arguments relating to the trial court's denial of a continuance to produce affidavits and decision to strike plaintiff's affidavits supporting the motion to vacate the July 8, 1987, order.

■ The Structural Work Act was created by the Illinois legislature to protect workers engaged in certain risks inherent in their employment by providing a remedy for injuries occasioned through violations of the Act's provisions. (*Halberstadt v. Harris Trust & Savings* (1973), 55 Ill. 2d 121, 302 N.E.2d 64.) Although other jurisdictions have determined that similar enactments have been superseded by workmen's compensation acts, our legislature has not reached such a determination. (See Marsh, *The Illinois Structural Work Act*, 1975 U. Ill. L.F. 393.) As a result, in Illinois, the Act is given a liberal interpretation. *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 481 N.E.2d 709.

Pertinent to the action before the court, section 1 of the Act provides:

> "(A)ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1985, ch. 48, par. 60.

In addition to the express language of the section above pertaining to coverage of the Act to injuries occasioned through the use of defective devices contemplated therein, Illinois courts also recognize actions based on the failure to provide same devices, reasoning that to interpret the Act otherwise would allow individuals to whom the Act was directed to evade potential liability simply by not providing necessary equipment. *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724; *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051.

■ On appeal, defendant contends that count III of the complaint fails to state a cause of action under the Act because plaintiff was not using a scaffold or other similar mechanical device and such was not needed for the work being performed. Defendant states the Act is not intended to impose liability for the failure to provide "stays" or "supports" as alleged. Defendant argues that in order to state a cause of action, the injured party must show that the injury has some connection with the hazardous nature of one of the devices enumerated in

the Act. Reliance is placed principally on the cases of *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 414 N.E.2d 147, and *Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967, 464 N.E.2d 1239.

In *Matthews*, the court held that in determining whether a particular device comes within reach of the Act as a "mechanical contrivance," a court must examine the particular use to which the device involved is put. When the device itself is being used as a foundation, bearing the weight of a workman against gravity, as the court stated is suggested by the inclusion of other enumerated devices in the Act all purportedly having that distinguishing feature, injury resulting from that use falls within purview of the Act. However, where support of the worker himself is not the primary purpose of the use of the device, the Act is not applicable. Thus, in *Matthews*, no liability under the Act was stated where the injury at issue arose from the use of a bulldozer to clear a stand of trees, rather than through the use of the bulldozer as a principal means of support of the weight of a worker against gravity.

In *Carlson*, the court applied the same interpretation of the Act as employed in *Matthews*. In *Carlson*, the plaintiff was injured when a row of lockers tipped over and fell on him during the course of cleaning a carpet in a school building. As a result of injuries sustained, recovery was sought, in part, under the Structural Work Act on the basis that the lockers would not have fallen if adequately braced with "stays" or "supports." In affirming the dismissal of the complaint, the court reasoned that plaintiff was not using a scaffold at the time of his injury and, more importantly, did not allege that his injury was due to the failure to provide a scaffold to support *himself*. (Emphasis in original.) The court stated that coverage under the Act was limited to cases in which there was "harm caused by a failure of something a worker is using to support *himself*." (Emphasis in original.) (*Carlson*, 124 Ill. App. 3d at 973, 464 N.E.2d at 1243.) In so holding, the court expressly rejected the interpretation of the Act as contained in *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051.

We decided *Urman* one year after the decision in *Matthews*. In *Urman*, we concluded that a narrow construction of the Act as suggested in *Matthews* (and now *Carlson*) is illogical because classifying the other devices enumerated in the Act in addition to scaffolds (hoists, cranes, stays, ladders, supports, or other mechanical contrivances) as synonymous with scaffolding, a platform for workmen, ignores the commonsense usage and dictionary definitions of those terms. (*Urman*, 101 Ill. App. 3d at 1091 n.2, 428 N.E.2d at 375 n.2.)

As the court in *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 441 N.E.2d 889, has correctly observed:

> "A narrow reading of the Act, focusing upon workman devices only, ignores that the primary function of hoists, cranes, and stays is not as support for men, but rather for materials. Those devices are specifically enumerated in the Act. Furthermore, *** the statutory language indicates a desire to protect workmen in, on, around and under support devices for materials on a construction site."

We therefore reject, once again, a narrow construction of the Act as suggested in *Matthews* and *Carlson* and reiterate that the Act is intended to cover support devices used on a construction site, and, necessarily, the failure to supply same, whether their purpose is to support workmen *or* materials.

Having reestablished what we consider to be the proper scope of the Act, we turn to the consideration of whether the allegations of plaintiff's complaint fall within its reach. Particularly instructive to such consideration is the decision of our supreme court in *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573. *McNellis* involved an action under the Structural Work Act for the death of plaintiff's husband, who died as a result of injuries sustained while unloading, from a railroad car, component parts of a steam-generator to be constructed by his employer for Commonwealth Edison. During trial, testimony was presented that a crane should have been used to hold the component parts in place during unloading. (Although two cranes were available, neither was used.) In affirming the verdict in plaintiff's favor, the appellate court relied upon the fact that a written agreement existed between plaintiff's decedent's employer and Commonwealth Edison which made the unloading a part of the general task of the erection of the steam-generator. On appeal before the supreme court, the decision was affirmed on the basis that the activity involved was an integral part of the construction project and therefore came within the liberal interpretation of the Act.

In the case at bar, count III of the complaint alleges that plaintiff's injuries were the proximate result of acts or omissions involving devices covered under the Structural Work Act which caused plaintiff to be struck by falling material on the site of the renovation project. Those allegations are sufficient to withstand the challenge that they do not comprise a legal cause of action. Under our reading of section 1 of the Act, injuries resulting from falling material on the site of the renovation of a building, occasioned through the failure to provide one of the devices contemplated for the support of that material, presents an

actionable set of facts. We are further persuaded under the holding of *McNellis* that plaintiff's activities at the time of his injury come within protective coverage of the Act. While we recognize that plaintiff has not alleged any agreement existed which would make the clearing of work space an express part of assembly of the duct work, it is our opinion that the absence of such express contract is not controlling. Count III alleges that plaintiff was in the process of gaining access to the duct work by moving the radiator when he was injured. Such steps became an essential part of the project as access to the duct work was obviously necessary to the performance of plaintiff's task. We view the allegations of the instant complaint as presenting an even stronger set of facts than those in *McNellis* for purposes of determining the applicability of the Act, because here it is alleged plaintiff was injured on the actual site of the renovation project. Because count III alleges that the failure to provide a support for the duct work was a direct cause of plaintiff's injury, which occurred during what became an integral part of the project, we cannot say that the complaint fails on its face to state a cause of action.

For the reasons stated above we reverse and remand for proceedings not inconsistent with this opinion.

Reversed and remanded.

PINCHAM and MURRAY, JJ., concur.