EILEEN McNELLIS, on behalf of Margaret McNellis, Petitioner-Appellant, v. MARTIN O'CONNOR, Respondent-Appellee.

First District (6th Division)   No. 1—93—0736

Opinion filed September 30, 1994.

Kaufman & Litwin, of Chicago (Paul L. Feinstein and Stuart N. Litwin, of counsel), for appellant.

Elizabeth M. Felly, of McDermott, Will & Emery, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This case involves the rights of a child born to an unwed mother to support from the child's father. The child, through her mother, appeals from an order dismissing the child's petition to increase child support payments and for other relief.

On September 2, 1988, the petitioner, Eileen McNellis, gave birth to Margaret. On December 7, 1988, the petitioner, by the State's Attorney, filed a "Complaint to Determine the Existence of the Father and Child Relationship." On April 11, 1989, the respondent, Martin O'Connor, admitted parentage of Margaret; he was ordered to pay $240 per month as temporary child support. On November 13, 1989, the trial judge made permanent the temporary child support, reserved the issue of visitation, and enjoined the petitioner from contacting the respondent except through his attorney. On December 13, 1989, by an agreed order, the respondent was ordered to pay $390 as prenatal and post-natal expenses; to pay $960 as retroactive child support; to provide medical insurance for Margaret; and to pay for one-half of medical and dental expenses not covered by his insurance.

On May 19, 1992, the petitioner, again by the State's Attorney, filed a "Petition for Modification Increase," based on a substantial change of circumstances. The petitioner alleged that the circumstances changed because respondent's income and the needs of the child had substantially increased. The petitioner also filed a Rule 237(b) (134 Ill. 2d R. 237(b)) notice to the respondent to produce Federal and State tax returns for the years 1989, 1990 and 1991; pay stubs; and other financial information. At that time Margaret was nearly four years old.

On August 31, 1992, the petitioner's attorney, who was an assistant State's Attorney, and respondent's counsel negotiated a settlement. Also present was her cousin, Patrick Sullivan, an attorney. The circumstances leading up to the settlement were disclosed later at the hearing at which the judge entered the order which is the subject of this appeal. We will discuss those circumstances later. An order was entered on that same day modifying the support obligations to $1,000 per month. An additional order was entered the same day requiring the respondent to be responsible for reasonable educational expenses for Margaret. Both orders were presented to the trial judge as agreed orders. Before entering the orders, the judge read the agreed orders and questioned the parties and their counsel. The judge asked the petitioner, "And this is satisfactory to you?" The petitioner said, "Okay. Yes." The judge then signed the orders.

Thirty days later, the petitioner filed another petition, this time

through a private attorney who also represents the petitioner in this appeal. Count I sought to vacate or modify the order of support; count II was a petition for the imposition of a child support trust; and count III was a petition to compel the respondent to visit Margaret. The petitioner later filed interrogatories and a request for production of documents for inspection and copying. The respondent filed objections to the interrogatories and objections to the request for production. He simultaneously filed a motion to strike and dismiss the petition and a memorandum in support of the motion. The motion to strike and dismiss was filed pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). The petitioner was given 21 days to file a response to the motion to dismiss the petition and to the objections to discovery. The petitioner filed her responses, and a hearing on the motion to strike was continued to February 1, 1993. On February 1, 1993, a hearing was conducted on the motion to strike and dismiss. After hearing from the attorneys for the parties, the judge dismissed the petition.

Our analysis necessarily begins with the allegation of the petition. The petition alleged that "little or no discovery of [the respondent's] income and assets was done," that the respondent had represented his income to be $25,000 per year at the time the settlement was entered into; that on information and belief the respondent was "the beneficiary of at least one trust fund and has substantial assets at his disposal"; that on information and belief "[the respondent's] income is far greater than $25,000 per year, and he misrepresented his income." Alternatively, the respondent's "income has increased substantially since the entry of the order, the same constituting a substantial change of circumstances." The petition also alleged that based on the representations of the respondent, and due to the fact that the petitioner was under duress and was not adequately informed as to the respondent's financial situation, she agreed to the entry of the order providing for the respondent to pay her only $1,000 per month for child support.

The petition asked for an increase in child support; that the respondent be obligated to pay for Margaret's college expenses; that the respondent be required to set up an appropriate amount of life insurance to secure his support obligation; that the respondent be required to pay all uncovered medical expenses of Margaret; and to pay the petitioner's attorney fees. The petitioner also filed an extensive set of interrogatories and a comprehensive request for production of documents, all of which were addressed to the financial condition of the respondent.

We turn now to the motion to strike and dismiss filed by the re-

spondent. It was identified as a motion to strike and dismiss "Pursuant to Section 2—615 of the Illinois Code of Civil Procedure." (Ill. Rev. Stat. 1991, ch. 110, par. 2—615.) The motion alleged that the "petition is substantially insufficient as a matter of law." The motion then described the history of the paternity proceedings and included allegations of fact. It described the settlement negotiations between the petitioner, an assistant State's Attorney and the respondent's attorney. The petition alleged that the parties and Patrick Sullivan, an attorney and the petitioner's cousin, "over a period of several hours, negotiated a settlement of child support."

The motion to strike and dismiss also alleged that the petition was insufficient as a matter of law for several reasons including the following: (1) the petitioner failed to allege that she exercised due diligence in pursuing discovery; (2) the petitioner failed to allege that any "newly discovered evidence exists" that would "justify vacation or modification of the agreed orders"; (3) the petitioner failed to allege with particularity the basis of her claim that she was under "duress"; (4) the petitioner failed to "allege the basis for her claim that [the respondent's] income increased substantially" or to "allege with particularity the basis of her claim that [the respondent's] income is greater than $25,000"; and (5) the petitioner failed to allege "with particularity the basis of her claim that [the respondent] misrepresented his income." The respondent also filed objections to the interrogatories and requests to produce documents.

In response to the motion to strike and dismiss, the petitioner argued that the motion to strike admitted all well-pleaded facts and that her allegations of the complaint stated a claim upon which relief could be granted. The petitioner also argued that agreements of the parties respecting child support are not binding on the court, citing *Blisset v. Blisset* (1988), 123 Ill. 2d 161, 526 N.E.2d 125.

The parties appeared for a hearing on February 1, 1993, on the motion to strike and dismiss. The judge asked what the issues were and the attorney for the respondent said that, because the respondent filed a "2—615 Motion to Strike and Dismiss," the issue was whether the three counts of the petition stated a claim upon which relief could be granted. The attorney for the respondent then addressed the court and made a recitation of the procedural history of the case. She also maintained that section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1203) was "more directed to circumstance where there has been an actual trial or hearing of evidence *** rather than *** where there was negotiation between the parties who were represented by counsel." She argued that the petitioner failed to allege any facts to show that in the 30-

day period between the entry of the agreed order and the date the petition was filed, the respondent's income had increased. She then told the judge the facts that led to the agreed order.

She said that she called the assistant State's Attorney and told him that she and her client "were very interested in settling the case [and] that we did want to offer" more than the $240 that had already been ordered be paid for Margaret's expenses. She asked the assistant State's Attorney how much the petitioner wanted, and he told her that "he'd have to call [the petitioner] and get back to [the respondent's attorney]." There were other discussions, and the respondent's attorney offered $700 a month. The assistant State's Attorney told her to just come to court on August 31, that he would have the petitioner there, and they would discuss it at that time.

On the morning of August 31, the petitioner was present with her cousin Patrick Sullivan and the assistant State's Attorney. The respondent was not present. "[T]hey requested some financial information from [the respondent's attorney] and the only information [she] had with [her] was [the respondent's] pay stub" which would have shown a gross income of $25,000 a year. "They" also asked her if she had any copies of bank statements, and she said that she did not have any with her. "They" asked her if she had a copy of the respondent's 1991 tax return, and she advised them that he had an extension until October 15, 1992, and that she would not have a copy of his return until that time. They went back and forth with discussions about college education expenses. The respondent's attorney asked for an affidavit of income and expenses from the petitioner. "They" said that the $700 offer was too low. At one point the petitioner said that they should continue everything until all discovery had been completed. The assistant State's Attorney said, "We'll have to take [the respondent's] deposition in September and October, and we need copies of the tax returns and whatever." The respondent's attorney told the others that they could try to settle the case that day. She also asked how much money the petitioner needed to settle.

The assistant State's Attorney pointed out that the $240 a month that the respondent was paying was about 20% of his net income of $25,000 a year, and he asked where the respondent was "going to even get $700 a month." The respondent's attorney said that the respondent's family "is very wealthy and that they wanted to take care of the child and that [the respondent] was going to be receiving the money to pay the child support from his family." The petitioner suggested $1,000 per month, plus payment of the reasonable educational expenses, and the respondent's attorney accepted that offer.

The attorney for the petitioner then began his response to the respondent's attorney by pointing out that the respondent's argument was "really in the nature of factual sorts of defenses that we do not deal with right now, today, under 2—615 motion." The judge then asked how the petitioner's attorney related to the testimony of the mother in open court that she was satisfied with the proposed order. He answered that they had alleged that there was little or no discovery of the respondent's income and that the petitioner was not "adequately informed." He pointed to the allegation that the respondent had misrepresented his income and said, "[I]f your honor was aware at that time that [the respondent] was misrepresenting his income, you certainly wouldn't have entered that order." He argued that they were entitled to have their discovery and their day in court. He pointed out that they had alleged that either the respondent had a greater income at the time and misrepresented it or that his income had increased. In response to a question by the judge, he said also that he was suggesting that the State's Attorney did not do his job. He admitted that he had not discussed the case with the State's Attorney and did not join him or serve him with copies of the pleadings. He concluded his argument by saying that he thought that they had made a "showing by the well-pleaded allegations that there is something afoot here, that we need the opportunity to have discovery and to have our day in court to determine that."

The judge then said the following:

"Looks to me like what we have here is a case of hindsight, rather than foresight. And when the mother left this courtroom she had second thoughts about the bargain she had made and had determined that it was not her best bargain. *** This lady made a bargain that was completely satisfactory to her at the time, and she is apparently benefitting from that bargain since there is no allegation of arrears. She has had her day in court, and she is not going to get a second one. I do not find any duress whatsoever. I'm satisfied that the agreement when entered was valid and still is valid. I am denying your motion to vacate my order of August 31, 1992. Your motion to modify, based on change in circumstances is denied since this Court will not participate in a fishing expedition by the mother. Your motion to impose a trust is denied. And your motion to compel visitation is denied."

Once again a court of review is confronted with a motion which identifies itself as having been brought under section 2—615 of the Code of Civil Procedure, but which includes affirmative matters extraneous to the petition that could be alleged only under section 2—619 of the Code. (Ill. Rev. Stat. 1991, ch. 110, par. 2—619.) This "hybrid motion" has been consistently criticized. "Reviewing courts

have long disapproved of this slipshod practice as it causes unnecessary complication and confusion." (*Talbert v. Home Savings of America* (1994), 265 Ill. App. 3d 376, 379, citing *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.) In *Talbert* the court said that the movant should have first challenged the legal sufficiency of the complaint under section 2—615 and that only after it had been determined that a legally sufficient cause of action had been stated should the court have entertained a section 2—619 motion. Unfortunately, in this case that required procedure was not followed.

The respondent does not answer the petitioner's principal argument that the judge improperly dismissed the complaint because the judge had before her a motion to strike the complaint and, therefore, the only issue should have been the sufficiency of the complaint taking all factual allegations as true. If those factual allegations were conclusional, as some of them apparently were, and if the allegations of a change in the respondent's financial condition or the allegation of a misrepresentation of the respondent's condition were not specific enough, the petitioner should have been given the opportunity to amend the petition. There are a number of issues which are present which were never decided in the trial court or which were not briefed or argued in this court. For example, to what degree may the lack of diligence of the mother be imputed to the child? Is an allegation on information and belief without disclosing the source of the information sufficient, particularly since those allegations go to the heart of the petition? (*Cf. Rezek v. Fishman* (1950), 340 Ill. App. 638, 92 N.E.2d 359 (abstract of opinion).) By pointing out these questions, we do not mean to indicate the answers to them.

We agree with the trial judge's implicit finding that the assistant State's Attorney could not be faulted. The assistant State's Attorney warned that the respondent's deposition should be taken and that the respondent should be required to provide tax returns "and whatever." He was aware that the petitioner had previously been represented by a private attorney. He was also aware that the petitioner had also previously had an award modified. Her cousin, a lawyer, was there, apparently advising the petitioner. The assistant State's Attorney was hardly in a position to interfere with the petitioner's decision to settle. We can imagine the position of the petitioner now, if the assistant State's Attorney blocked the settlement and, after full disclosure and a trial, the child received less than the amount that had been offered. In sum, we can appreciate the assistant State's Attorney's deference to the decision of the petitioner.

We agree with the respondent that the allegation that the petitioner was under duress was a conclusion; and we agree with the trial judge's determination that the "facts" alleged by the parties' attorneys at the hearing would be insufficient to establish duress, but we cannot give our approval to the procedure that was followed in this case. The trial judge should first have addressed the sufficiency of the allegations of the petition, and if they were not sufficient, the petitioner should have been given the opportunity to correct the insufficiency. As this court stated in *Morrey v. Kinetic Services, Inc.* (1985), 133 Ill. App. 3d 1002, 1005, 479 N.E.2d 953, "After a shirt or blouse is incorrectly buttoned, the solution is to unbutton it completely and start all over." Because the motion to dismiss the complaint should not have been granted, we are placing the case where it was before the entry of the dismissal order.

For these reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Judgment reversed and remanded.

McNAMARA and GIANNIS, JJ., concur.